40938. HARGROVE et al. v. THE STATE.
(321 SE2d 104)

CLARKE, Justice.

Appellants Hargrove, Kelly and Swetman were indicted for the offenses of dogfighting, gambling and commercial gambling. The jury convicted each of them of dogfighting and gambling and convicted Hargrove and Swetman on the commercial gambling counts. On appeal they raise the constitutionality of OCGA § 16-12-37, the dogfighting law and the sufficiency of the evidence relating to all other counts. We hold the statute to be constitutional and affirm.

Appellants were arrested when law enforcement officers from Mitchell County, Dougherty County and the GBI raided a dogfight being held in a wooded area on the property of Hargrove during the early morning hours. Officers were staked out in the wooded area and converged on the pit area when sounds of dog yapping and moaning could be heard. They also overheard someone say, "I'll take five on that." When the officers converged on the scene Swetman was inside

a square pit with two dogs which were bloodied with wounds on their legs and the head areas. There was blood on Swetman's arms and clothing. Hargrove was apprehended leaving the pit area and Kelly was found hiding in some bushes.

In addition to the law enforcement officers who testified for the prosecution, the state also called Marc Paulhus, the southeastern regional director of the Humane Society of the United States, who accompanied the officers on the raid. Mr. Paulhus was qualified at trial as an expert on animal affairs and on dogfighting in particular.

He testified as to the general nature of dogs trained to fight, specifically pit bulls, and how dogfights are booked and how fights between particular dogs are contracted in advance. He identified the uses of certain dogfighting paraphernalia seized on Hargrove's property. Weighing scales marked with Swetman's name were found near the pit. Paulhus testified that most contracts specify a fighting weight and therefore the dogs must be weighed before each match. Washtubs were seized at the scene which are used to wash the dogs before a fight to ensure that no poisoning or paralytic agents have been applied to the dogs' coats.

Paulhus also described the use of "breaking sticks" which are used to pry open a dog's mouth when they are separated during a fight. Two of these sticks were taken from the fight pit and one was found in Hargrove's pocket.

Also seized were two treadmills used for endurance and strength training and a device called a "catmill," also for increasing stamina and on which other animals are used as bait.

Paulhus also testified without objection that the ultimate purpose of dogfighting is to make money through gambling. Money is put down on the contracts themselves and bets are made with spectators and opponents.

The first three enumerations of error raise constitutional attacks to the dogfighting statute OCGA § 16-12-37: "(a) A person commits the offense of dogfighting when he causes or allows a dog to fight another dog for sport or gaming purposes or maintains or operates any event at which dogs are allowed or encouraged to fight one another.

"(b) A person convicted of the offense of dogfighting shall be punished by a mandatory fine of $5,000.00 or by a mandatory fine of $5,000.00 and imprisonment for not less than one year nor more than five years."

1. In their first enumeration appellants contend that the statute is unconstitutionally vague and violates due process in that it is not sufficiently definite and certain in its description of the prohibited conduct. They argue that the statute makes it a crime for a person to "allow" a dogfight to occur, and that the conduct thus prohibited is impossible to define; consequently, men of common intelligence are

not given fair notice of the conduct which is forbidden.

The inherent vagueness present in the English language has been noted by this court previously. *Caby v. State*, 249 Ga. 32 (287 SE2d 200) (1982); *Wilson v. State*, 245 Ga. 49 (262 SE2d 810) (1980). We have recognized that "mathematical certainty" is not necessary in statutes. *Wilson*, supra. "[A] criminal statute is sufficiently definite if its terms furnish a test based on knowable criteria which men of common intelligence who come in contact with the statute may use with reasonable safety in determining its command." *Stull v. State*, 230 Ga. 99, 100 (196 SE2d 7) (1973). *Price v. State*, 253 Ga. 250 (319 SE2d 849) (1984). In addition, the statute must be read as a whole, each phrase or word in conjunction with the other in order to determine the scope of prohibited activity. See *McCord v. State*, 248 Ga. 765 (285 SE2d 724) (1982).

The statute in question does not make unlawful allowing a dogfight to occur but prohibits one from "causing or allowing a dog to fight another dog *for sport or gaming purposes*." (Emphasis supplied.) OCGA § 16-12-37. Funk & Wagnalls Standard Dictionary defines "allow" as "1. To permit to occur or do. 2. To concede; admit. 3. To make provision for." The definition of "permit" as a verb in the same dictionary includes "1. To allow the doing of. 3. To afford opportunity for." In *Colonial Stores v. Scholz*, 73 Ga. App. 268 (36 SE2d 189) (1945), the court held that the term "allow" encompasses knowledge and consent.

We construe "allow" as used in the statute to mean any act which contributes to the cause of a dogfight for sport or gaming purposes or furthers the success of the enterprise of a dogfight for sport or gaming purposes. Thus if a person engages on any level in the planning or financing of the event, including paying an admission, providing a location or wagering on the event or if a person encourages the event by applause or cheering, such person violates the statute. The foregoing examples are not, however, intended to exclude other acts which cause the event to occur or contribute to its success.

We hold the statute is sufficiently definite to put those of common intelligence on notice that knowing participation in a dogfighting event is prohibited.

2. Appellants next contend that the penalty provided for violating the dogfighting statute is excessive and violates the Eighth Amendment to the United States Constitution in that it is disproportionate to the punishment for other crimes within this state and to the punishment for the same crime in other states. Weems v. United States, 217 U. S. 349 (30 SC 544, 54 LE 793) (1910); Coker v. Georgia, 433 U. S. 584 (97 SC 2861, 53 LE2d 982) (1977). A punishment is excessive so as to amount to cruel and unusual punishment if it "(1) makes no measurable contribution to accepted goals of punishment

and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." Coker, supra at 2866.

We will not here set forth the comparisons made by the appellants who cite to states making dogfighting a misdemeanor, and statutes affording misdemeanor punishments for other crimes in this state. Nor will we cite the appellants' list of states making dogfighting a felony and other Georgia felony statutes. We hold as a matter of law that a $5,000 fine with an optional one year in prison does not amount to cruel and unusual punishment for those convicted of dogfighting in this state. ·

3. Similarly, we reject the argument that the statute is invalid on equal protection grounds. Appellants contend that it is discriminatory to only prohibit dogfighting and to make that crime a felony while the cruelty to animals law, OCGA § 16-12-4, which has been held to encompass cockfighting, *Brackett v. State*, 142 Ga. App. 601 (236 SE2d 689) (1977), only provides for misdemeanor punishment. Appellants argue there is no compelling interest which justifies the classification and therefore the statute is arbitrary under Shapiro v. Thompson, 394 U. S. 618 (89 SC 1322, 22 LE2d 600) (1969). This case does not involve a suspect classification and no fundamental rights are limited by the law. The legislature has a wide discretion in the exercise of its police power in setting classifications and penalties. *Davis v. State*, 248 Ga. 783 (286 SE2d 430) (1982). Such laws will not be held invalid if there is any basis upon which the law is aimed at a legitimate state interest. *Smith v. Crim*, 240 Ga. 390 (240 SE2d 884) (1977); *Davis*, supra.

OCGA § 16-12-4 makes it a misdemeanor for anyone to subject any animal to cruel treatment. The legislature has acted within its discretion in mandating that those who participate in a dogfight organized for sport or gaming purposes should be dealt with more harshly. The state has a legitimate interest in discouraging organized dogfights which attract a group of people who either bring dogs to fight or engage in wagering bets on the contests. We find no substance to the argument that the statute violates equal protection.

4. In their next enumeration of error the appellants contend the evidence is insufficient to support any of the convictions. Count I of the indictment alleges that each of them did "unlawfully . . . allow a dog to fight another dog for gaming purposes." Count II alleges that each unlawfully did "make a bet upon the final result of a contest, to wit: dog fight." Count III alleges each of the appellants operated "a gaming place to wit: a dog fight, held on premises controlled by Harry Hargrove." This count further alleges that the dog fight took place under Hargrove's control and with his permission, that Kelly was the referee, and Swetman furnished paraphernalia and acted as a dog

handler.

The main attack on the evidence is that the indictments as drawn require evidence of gaming or gambling and there was no evidence to show that bets were made.

No money was seen changing hands and no "pot" of money was found. Around 50 people were arrested at the scene and a total of $17,000 was found in the possession of these individuals. Hargrove had $276, Kelly had $338 and Swetman had $156. Officers overheard someone say "I'll take five on that." These facts, together with the equipment found at the scene, the time and place of the event and the evidence as to the nature of dogfighting are sufficient for a rational trier of fact to conclude that the purpose of the event was a "gaming purpose" as alleged in the indictment.

A person commits the crime of gambling when he "Makes a bet upon the partial or final result of any game or contest or upon the performance of any participant in such game or contest." OCGA § 16-12-21. Appellants contend that the convictions under this law rest only on conjecture and the circumstances do not show guilt beyond a reasonable doubt and requires reversal under Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The state argues that the circumstantial evidence is sufficient and that to require an eyewitness to a bet would make gambling prosecution impossible. The evidence of gambling devices and the purpose of dogfighting is sufficient to convict.

As to the commercial gambling charge, the evidence was sufficient to convict both Swetman and Hargrove of participating in a commercial gambling operation. The fight was staged on Hargrove's property on which the pit and treadmills were erected. The scales had Swetman written on the back and Swetman was in the pit and covered with blood. The dogfight was shown to have been highly organized, there was evidence of gambling and the evidence was sufficient to show that Hargrove and Swetman were involved in its operation.

5. Appellants Hargrove and Swetman contend that OCGA § 16-1-7 (a) prohibits their convictions and sentences upon Counts I and III of the indictment. OCGA § 16-1-7 (a) provides: "(a) When the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if: (1) One crime is included in the other; or (2) The crimes differ only in that one is defined to prohibit a kind of conduct generally and the other to prohibit a specific instance of such conduct."

Appellants argue that the dogfighting count is included in the commercial gambling count as a matter of fact. We disagree. Count I only alleges that they allowed a dog to fight for gaming purposes. OCGA § 16-12-37 also defines dogfighting as maintaining or operating

a dogfight but they were not indicted or charged under this portion of the statute. Dogfighting is not as a matter of law a lesser included offense of commercial gambling. We reject appellants' contention that in this case the evidence used to convict for each crime is the same and therefore lesser included as a matter of fact. See *State v. Estevez*, 232 Ga. 316 (206 SE2d 475) (1974).

6. We find no abuse of discretion in the trial court's excepting one officer from the rule of sequestration. See *Pearley v. State* 235 Ga. 276 (219 SE2d 404) (1975).

*Judgment affirmed. All the Justices concur, except Hill, C. J., and Smith, J., who dissent in part as to Division 4 and also dissent as to Division 5.*

DECIDED OCTOBER 2, 1984 —
REHEARING DENIED OCTOBER 30, 1984.

*Twitty & Slover, Jack G. Slover, Jr., Kenneth L. Gordon, Steven Schaikewitz,* for appellant.
*J. Brown Moseley, District Attorney,* for appellee.
*Roger A. Kindler, John McKie,* amicus curiae.

HILL, Chief Justice, concurring in part and dissenting in part.

I dissent to so much of Division 4 as finds the evidence to be sufficient to find defendant Kelly guilty of the crime of dogfighting. The only evidence against Kelly was that he was found hiding in some bushes and had $338 on his person.

I dissent to so much of Division 4 as finds the three defendants guilty of gambling. Although the evidence against Hargrove and Swetman was sufficient to find them guilty of the crime of dogfighting and commercial gambling, there is no evidence that any of these defendants made any bets on any dog. See OCGA § 16-12-21 which defines the crime of gambling.

I dissent to Division 5 because, under the facts of this case I would find the crime of dogfighting, OCGA § 16-12-37, as alleged in this indictment to be a lesser included crime to the offense of commercial gambling, OCGA § 16-12-22, as alleged in this indictment (operating "a gaming place, to wit: a dogfight . . ."). See OCGA § 16-1-7 (a) (2).

I therefore concur in Divisions 1, 2, 3 and 6 of the majority opinion and so much of Division 4 as finds defendants Hargrove and Swetman guilty of commercial gambling.

I am authorized to state that Justice Smith joins in the foregoing.