## S97A2082. BOHANNON v. THE STATE.
(497 SE2d 552)

SEARS, Justice.

We granted the application for interlocutory appeal filed by the appellant, Ryan Bohannon, to consider his due process challenges to OCGA § 40-6-391 (a) (5), which provides that it is a crime to have a blood-alcohol concentration of .10 or greater, as measured within three hours of driving, if the blood-alcohol level results from alcohol consumed either before or while driving. Bohannon contends that subsection (a) (5) violates due process (1) because it is not reasonably related to a legitimate state interest, (2) because it is too vague to apprise people of the prohibited conduct, (3) because it is overbroad in that it criminalizes constitutionally protected activity, and (4) because it creates a burden-shifting presumption. We conclude that § 40-6-391 (a) (5) is not unconstitutional for any of the first three reasons urged by Bohannon. We decline to address the fourth constitutional challenge because the record demonstrates that the issue was not properly raised before the trial court and was not ruled on by the trial court. For these reasons, we hold that the statute is constitutional, and affirm the trial court's judgment.

1. Before addressing the constitutional questions raised by this appeal, it is important to examine what conduct OCGA § 40-6-391 (a) (5) prohibits.

This subsection provides that it is a crime to have a blood-alcohol concentration of .10 or greater, as measured within three hours of driving, if the blood-alcohol level results from alcohol consumed either before or while driving. This provision was added to OCGA

§ 40-6-391 (a) in 1990, as subsection (a) (4).[1] Before its amendment in 1990, § 40-6-391 (a) (4) had provided that "[a] person shall not drive or be in actual physical control of any moving vehicle while: . . . There is .12 percent or more by weight of alcohol in his blood."[2] In *Lester v. State*, we addressed the constitutionality of former subsection (a) (4), and in doing so, explained that it was irrelevant to the crime defined by that subsection (a) (4) whether or not the driver was driving while actually impaired.[3] We held that "[s]ubsection (a) (4) defines a specific act, driving while having a blood-alcohol count of at least .12%, as criminal. . . . Impaired driving ability is not a 'fact necessary to constitute the crime' established in subsection (a) (4)."[4] We further stated that "proof of the ability to drive well while having a high blood-alcohol count will not affect the ascertainment of guilt . . . under subsection (a) (4)."[5] Perhaps most significantly, we held that

> [t]he legislature, in enacting subsection (a) (4), is not declaring that everyone who has a blood-alcohol count of .12% or higher will be impaired in his driving, or that everyone with a lower percentage can drive safely. The statute represents the judgment that the public interest will be best served if no one with such a high blood-alcohol count drives.[6]

For these same reasons, it is clear that impaired driving ability is not an element of the offense under current subsection (a) (5); rather, the subsection defines a specific act — having a blood-alcohol concentration of .10 or greater, as measured within three hours of driving, if the blood-alcohol level results from alcohol consumed either before or while driving — and makes that act a crime.

2. We now turn to Bohannon's contention that § 40-6-391 (a) (5) constitutes an improper exercise of the police power.

" '[A] solemn act of the legislature is presumed to be constitutional. [Cit.]' [Cit.] Only when a statute manifestly infringes upon a constitutional provision or violates the rights of the people should the judicial branch impede its operation."[7] Moreover, under its police power, the state can enact laws that promote public health, safety,

---

[1] Ga. L. 1990, pp. 2048, 2312. As originally enacted, the new subsection contained a prohibited blood-alcohol level of .12; it was changed to .10 in 1991. Ga. L. 1991, pp. 1886, 1891.

[2] See *Lester v. State*, 253 Ga. 235, 236, n. 1 (320 SE2d 142) (1984).

[3] Id. at 237-238.

[4] Id. at 237-238.

[5] Id. at 238, n. 4.

[6] Id. at 238, n. 5.

[7] (Citations omitted.) *Miller v. State*, 266 Ga. 850, 852 (472 SE2d 74) (1996). Accord *State v. Brannan*, 267 Ga. 315, 317 (477 SE2d 575) (1996).

and welfare,[8] and "[s]uch laws will not be held invalid if there is any basis upon which the law is aimed at a legitimate state interest."[9] Finally, in *Lattarulo v. State*,[10] this Court held that determining the blood-alcohol levels at which people should not drive "is within the legislature's authority under the Twenty-First Amendment and the police power and is the type of determination that is particularly well-suited to the legislative process."[11]

In enacting § 40-6-391 (a) (5), the General Assembly obviously concluded two things: First, that a person who consumes enough alcohol before or while driving to have an alcohol concentration of .10 or greater within three hours of driving must have had some amount of alcohol in their system *at the time of driving*; and, second, that the public interest is served by prohibiting such people from driving. Both of these conclusions are reasonable, and are reasonably related to public safety by curtailing alcohol-related accidents.[12] Bohannon's contention that such a law does not have a rational basis would defy common sense; would undermine the presumption of validity accorded to solemn acts of the General Assembly; would ignore the mayhem and menace caused by alcohol-related automobile wrecks; and would subvert the General Assembly's efforts to protect our society from the terrible damage caused by this other form of "traffic" in drugs.

Moreover, Bohannon's contention that subsection (a) (5) is not reasonably related to a legitimate state interest appears to rest on the false premise that the General Assembly only has an interest in legislating in the area of drinking and driving if it makes driving while actually impaired an element of the offense. We ruled against such a notion in *Lester* when we stated that driving while actually impaired was not an element of the offense under former subsection (a) (4), and that "[t]he statute represents the judgment that the public interest will be best served if no one with such a high blood-alcohol count drives."[13]

Finally, courts around the country have made well-reasoned decisions that statutes virtually identical to § 40-6-391 (a) (5) are a proper exercise of the police power.[14] For instance, in *Skinner*, the

---

[8] *Veit v. State*, 182 Ga. App. 753, 756 (357 SE2d 113) (1987).

[9] (Citations omitted.) *Hargrove v. State*, 253 Ga. 450, 453 (3) (321 SE2d 104) (1984).

[10] 261 Ga. 124 (401 SE2d 516) (1991).

[11] Id. at 125.

[12] See *Lester*, 253 Ga. at 238, n. 5; *Lattarulo*, 261 Ga. at 125.

[13] *Lester*, 253 Ga. at 238, n. 5.

[14] *United States v. Skinner*, 973 FSupp. 975, 977-978 (W.D. Wash. 1997); *State v. Chirpich*, 392 NW2d 34, 37 (Minn. App. 1986); *State v. Rose*, 323 SE2d 339, 342-343 (N.C. 1984); *State v. Howren*, 323 SE2d 335, 338 (N.C. 1984); *City of Fargo v. Stensland*, 492 NW2d 591, 594-595 (N.D. 1992). See also *State v. Tischio*, 527 A2d 388 (N.J. 1987).

court concluded that the statute in question was reasonably related to public safety. In doing so, the court rejected Skinner's contention that the statute in question exceeded the police powers because it "could support a criminal conviction of persons who were not 'intoxicated' at the time they actually operated the motor vehicle."[15]

> To argue that the rule is unconstitutional for effectively making "legal" behavior illegal is implicitly to argue that driving with a 0.10 percent BAC or higher is the only DUI-related behavior that the State can prohibit legitimately. In other words, Appellants' argument rests on the false premise that only driving with a BAC of 0.10 percent or higher threatens the public safety. To the contrary, the legislature has decided that driving after having consumed enough alcohol to cause one's BAC to rise to 0.10 percent within two hours after driving is dangerous to the public. . . . The 0.10 percent BAC is not some magical bright line between safely drunk and unsafely drunk, and the fact that driving with less than a 0.10 percent BAC may prove to be criminal under the two-hour rule does not mean that the rule is arbitrary or not substantially related to public safety.[16]

Similarly, the Supreme Court of North Carolina has declared that North Carolina's counterpart to our subsection (a) (5) is well within the police powers. "A person whose blood-alcohol concentration, as a result of alcohol consumed before or during driving, was at some time after driving 0.10 or greater must have had some amount of alcohol in his system at the time he drove. The legislature has decreed that this amount, whatever it might have been, is enough to constitute an offense. This it may constitutionally do."[17]

For the foregoing reasons, we hold subsection (a) (5) is reasonably related to a legitimate state interest.

3. Bohannon also contends that § 40-6-391 (a) (5) is void for vagueness because it fails to give people fair warning of what conduct is prohibited.[18] For numerous compelling reasons, we disagree.

In *Lester v. State*,[19] this Court addressed whether former subsec-

---

[15] *Skinner*, 973 FSupp. at 978.
[16] *Skinner*, 973 FSupp. at 978.
[17] *Rose*, 323 SE2d at 343.
[18] A statute may also be void for vagueness if it defines a criminal offense in a manner that encourages arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U. S. 352, 357 (103 SC 1855, 75 LE2d 903) (1983). Bohannon, however, does not contend that OCGA § 40-6-391 (a) (5) is void for this reason, and we therefore do not address that aspect of the vagueness doctrine.
[19] 253 Ga. at 236-237.

tion (a) (4) was unconstitutionally vague. Our analysis in that case is instructive in this one. We noted that " '[m]any statutes will have some inherent vagueness for "in most English words and phrases there lurk uncertainties," ' "[20] and that " '[a]ll the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden.' "[21] As explained in Division 1 of this opinion, former subsection (a) (4) made it illegal to drive while having a blood-alcohol level of .10 or greater. Lester contended that the statute was vague because the average person could not detect when he would reach the proscribed blood-alcohol level at the time of driving, and in fact, could not know that his conduct was in violation of the statute until he had been arrested and given a chemical test.[22] We held as follows:

> Where the statute informs the public that a person who has consumed a large amount of alcohol chooses to drive at his own risk, we find that the statute is sufficiently definite in informing the public so that it might avoid the proscribed conduct.[23]

We conclude that the same analysis holds true for current subsection (a) (5). The only difference between the two statutes is that under former (a) (4), a person had to gauge when he had consumed a sufficiently large quantity of alcohol so that when he drove he would have the prohibited blood-alcohol level, whereas under subsection (a) (5), a person must judge when he has consumed a sufficiently large quantity of alcohol so that when he is tested within three hours of driving, 'he would have the prohibited blood-alcohol level. Under either statute, a person knows the prohibited level and has to assess the effects of alcohol in their system so that they do not reach the prohibited level at some point later in time; under either statute, a person who "drinks a substantial amount of alcohol . . . is put on notice that he chooses to drive at his own peril."[24]

For his contention that subsection (a) (5) is void for vagueness, Bohannon relies on the decision in *Commonwealth v. Barud*,[25] in which the Pennsylvania Supreme Court reached the conclusion urged by Bohannon in the present case. In addition to finding the *Barud* decision unpersuasive for the reasons set forth above, we note

---

[20] *Lester v. State*, 253 Ga. at 236 (quoting *Rose v. Locke*, 423 U. S. 48, 49, 50 (96 SC 243, 46 LE2d 185) (1975)).

[21] *Lester*, 253 Ga. at 236 (quoting *Rose*, 423 U. S. at 50).

[22] *Lester*, 253 Ga. at 236.

[23] Id. at 237.

[24] *Lester*, 253 Ga. at 236-237.

[25] 681 A2d 162 (Pa. 1996).

that other courts have concluded that statutes such as subsection (a) (5) sufficiently apprise people of the prohibited conduct.[26] In *Skinner*, for example, the defendant conceded that a statute which required a person to assess his alcohol level at the time of driving would not be void for vagueness, but contended that the statute at issue, which prohibited a blood-alcohol level of .10 or higher within two hours of driving, was void for vagueness because, according to Skinner, a person could not assess, with any accuracy, whether his alcohol consumption would reach the prohibited level within two hours of driving.[27] The district court rejected this contention:

> While it certainly must be hard to predict if one's BAC has reached or will reach 0.10 percent within any time frame, this does not mean that the two-hour rule provides no notice of the prohibited conduct. To the contrary, the two-hour rule, just as the former time-of-driving rule, gives fair notice that, although driving after drinking is not illegal per se, driving becomes illegal after a certain level of consumption; the fact that people cannot sense exactly what their BAC is at any given moment or will be in two hours does not change this. As the Arizona State Supreme Court put it, "where a statute gives fair notice of what is to be avoided or punished, it should not be declared void for vagueness simply because it may be difficult for the public to determine how far they can go before they are in actual violation." Fuenning v. Superior Court ex rel. Maricopa County, 139 Ariz. 590, 598, 680 P.2d 121, 129 (1983). The rule is clear enough that, by driving after drinking, "reasonable persons should know that their conduct is at risk, [*Maynard v. Cartwright*, 486 U. S. 356, 361 (108 SC 1853, 100 LE2d 372) (1988)], and need not necessarily guess at its meaning," [*United States v. Lanier*, ___ U. S. ___ (117 SC 1219, 1225, 137 LE2d 432) (1997)].[28]

Similarly, in considering a vagueness challenge to a statute that proscribed having a specified blood-alcohol level within two hours of driving, an Arizona court of appeals concluded as follows:

> Although section 28-692 (A) (2) now provides that it is illegal to have a BAC of 0.10 or more within two hours of driving — rather than a BAC of 0.10 at the time of the offense as pro-

---

[26] *Skinner*, 973 FSupp. at 979-981; *State v. Martin*, 847 P2d 619, 622-623 (Ariz. App. 1992); *Chirpich*, 392 NW2d at 37; *State v. Rose*, 323 SE2d at 340-342.

[27] *Skinner*, 973 FSupp. at 980.

[28] *Skinner*, 973 FSupp. at 980.

vided in former section 28-692 (A) (2) — the reasoning in *Thompson* is applicable here. By establishing a specific, objective criterion of a pre-defined BAC with which to compare an individual's BAC, the statute provides notice of the prohibited conduct with sufficient particularity.

Similarly, the phrase "within two hours of driving or being in actual physical control of the vehicle" provides specific and objective guidelines to the potential offender and to those charged with enforcing the law. The principal difference between former section 28-692 (A) (2) and the present section is that the legislature has "concluded that a person with a BAC of 0.10 or greater within the two hour period poses a sufficient danger to the public to justify broadening the statutorily proscribed conduct." *Cacavas v. Bowen*, 168 Ariz. 114, 116, 811 P.2d 366, 368 (App. 1991). Neither the time frame imposed nor the requirement of driving or being in actual physical control defy common understanding. The statute gives fair notice to a driver who has been drinking that blood alcohol testing may take place over a two-hour period and that a BAC of 0.10 within that time violates section 28-692 (A) (2).[29]

The North Carolina Supreme Court has engaged in the same analysis as the *Skinner* and *Martin* courts in concluding that North Carolina's counterpart to OCGA § 40-6-391 (a) (5) is not unconstitutionally vague.[30]

For the foregoing reasons, we conclude that subsection (a) (5) sufficiently informs people of the conduct that is prohibited.

4. Bohannon next contends that § 40-6-391 (a) (5) is unconstitutionally overbroad in that it punishes activity that is constitutionally protected. We disagree.

"A statute is unconstitutionally over-broad if it reaches a substantial amount of constitutionally protected conduct."[31] In this regard, Bohannon appears to contend that a person has a constitutional right to drink and drive so long as he is not impaired and a constitutional right to drink and drive so long as his blood-alcohol content does not reach a specified level *at the time of driving*. Bohannon, however, cites to no authority holding that such behavior is constitutionally protected, and we decline the opportunity to conclude that it is. Other courts have reached this same result.[32]

---

[29] *Martin*, 847 P2d at 623.
[30] *Rose*, 323 SE2d at 341-342.
[31] *Johnson v. State*, 264 Ga. 590, 591 (449 SE2d 94) (1994).
[32] *Stensland*, 492 NW2d at 593-594; *Chirpich*, 392 NW2d at 36-37.

Moreover, although the Pennsylvania Supreme Court in *Barud* concluded that Pennsylvania's counterpart to subsection (a) (5) was overbroad, we conclude that the reasoning of the *Barud* court was fundamentally flawed. The Pennsylvania court concluded that the Pennsylvania statute was overbroad because it did not "even require any proof that the person had a BAC above the legal limit at the time of driving, thereby criminalizing conduct which has not been declared criminal by the legislature."[33] As pointed out by the federal district court in *United States v. Skinner*,[34] this statement by the *Barud* court is flawed, because, in fact, the Pennsylvania legislature had made illegal the conduct in question — having a BAC of .10 or greater within three hours of driving stemming from alcohol consumed before or while driving — and had made it irrelevant to that crime whether the person had a BAC of .10 or more at the time of driving.

Because Bohannon has not demonstrated that § 40-6-391 (a) (5) impinges on a substantial amount of constitutionally protected activity, we conclude that his overbreadth challenge must fail.[35]

5. Bohannon's final contention is that § 40-6-391 (a) (5) creates a mandatory irrebuttable presumption that is unconstitutionally burden-shifting. The record, however, demonstrates that this contention was not properly raised before the trial court, and was not ruled on by the trial court. Accordingly, Bohannon may not raise the issue on appeal.[36]

6. For the foregoing reasons, we reject Bohannon's constitutional challenges to OCGA § 40-6-391 (a) (5), and affirm the trial court's judgment.

*Judgment affirmed. All the Justices concur, except Benham, C. J., and Carley, J., who dissent.*

CARLEY, Justice, dissenting.

Ryan Bohannon was charged with violating OCGA § 40-6-391 (a) (5) and he asserts that that enactment is unconstitutionally vague. As the majority correctly holds, the scope of the statute is narrowed somewhat by the requirement that the proscribed post-driving blood-alcohol level result only from alcohol consumed before or during the act of driving. Thus, the statute applies only to those individuals who register the proscribed blood-alcohol level and who drank before or while driving. However, OCGA § 40-6-391 (a) (5) still must establish

---

[33] *Barud*, 681 A2d at 166.

[34] *Skinner*, 973 FSupp. at 978 and n. 3.

[35] *Johnson*, 264 Ga. at 591-592.

[36] *Shirley v. State*, 254 Ga. 723, 724 (334 SE2d 154) (1985); *Hardison v. Haslam*, 250 Ga. 59, 61 (3) (295 SE2d 830) (1982).

a standard which is sufficient " 'to enable (individuals) to conform their conduct to avoid that which is forbidden. . . .' " *Hall v. State,* 268 Ga. 89, 92 (2) (485 SE2d 755) (1997). Thus, the statute "must give the individual notice so that he may make an intelligent choice when deciding whether to drive after he has been or while he is drinking." *Lester v. State,* 253 Ga. 235, 236 (1) (320 SE2d 142) (1984). In my opinion, OCGA § 40-6-391 (a) (5) does not establish a constitutionally sufficient standard and is, therefore, unconstitutionally vague. Accordingly, I respectfully dissent.

"When a person drinks, his blood-alcohol count rises." *Lester v. State,* supra at 236 (1). The majority concludes that here, as in *Lester,* the contested statute provides a standard sufficient to apprise an individual that his or her blood-alcohol content has risen to the proscribed level such that the act of driving should be avoided. In my opinion, *Lester* is entirely distinguishable because the terms of the contested statutes are fundamentally different. The former per se statute at issue in *Lester* proscribed a specified blood-alcohol level *at the time of driving* and was, therefore, sufficient to inform the public that a person whose prior consumption of alcohol was so great that the blood alcohol level had risen to that level *while driving* was guilty of a crime. *Lester v. State,* supra at 237 (1). There was a clear nexus between the prior alcohol consumption and the subsequent act of driving itself. Thus, one committed a per se violation of OCGA § 40-6-391 (a) only by drinking alcohol and subsequently driving after the blood-alcohol level had risen to the proscribed level, whereas one who drove shortly after drinking an equal amount of alcohol faced no criminal prosecution for a per se violation if the act of driving was completed before the blood-alcohol content rose to the proscribed level. Compare OCGA § 40-6-391 (a) (1). Under OCGA § 40-6-391 (a) (5), however, the proscribed blood-alcohol level at the time of driving is totally unspecified and wholly irrelevant to criminal responsibility. Instead, the blood-alcohol level *while driving* is merely that which will be sufficient to rise to 0.10 grams or greater *within three hours* after the person has ceased to drive. Thus, unlike the standard of conduct established under the former per se statute, OCGA § 40-6-391 (a) (5) requires that any individual who wishes to avoid committing a per se violation must determine whether his or her blood-alcohol content will exceed 0.10 grams not only while actually driving, but at any time within three hours thereafter. Under the former per se statute, a person who drank definitely knew that he or she did not violate that statute by driving before the proscribed blood-alcohol level was reached. Under OCGA § 40-6-391 (a) (5), a person who drinks cannot know whether he or she has committed a per se violation until three hours after the driving has ended.

Standing alone, neither the consumption of alcohol nor the oper-

ation of a vehicle constitutes a crime under OCGA § 40-6-391 (a). It is only when the consumption of alcohol causes the attainment of a proscribed blood-alcohol level or results in the imbiber becoming a less safe driver that a violation of the statute occurs. Thus, the consequence of alcohol consumption must coincide with the act of driving. It is constitutional for the General Assembly to declare that the act of driving while having a specified blood-alcohol level is a crime. *Lester v. State*, supra. The General Assembly may even provide that it is unlawful to drive with *any* level of intoxicants in the system. See *Kevinezz v. State*, 265 Ga. 78 (454 SE2d 441) (1995) (zero tolerance for driving with "any amount" of marijuana or cocaine in the blood or urine). In my opinion, however, it is unconstitutional to predicate a per se violation of OCGA § 40-6-391 (a) upon a standard which requires the individual to " 'predict when and whether a 0.10 [gram] alcohol level will be reached within three hours of driving[.]' " *Commonwealth v. Barud*, 681 A2d 162, 166 (Pa. 1996). Entirely unlike the statute construed in *Lester*, the present Code section requires that individuals of common intelligence now must necessarily guess as to whether their present conduct will result in a future criminal violation and they can assure against a criminal prosecution only by waiting to drive for at least three hours after taking a drink. Because I believe that, as worded, OCGA § 40-6-391 (a) (5) is unconstitutionally vague, I must dissent to the majority's contrary holding.

I am authorized to state that Chief Justice Benham joins in this dissent.

DECIDED FEBRUARY 23, 1998.

*Sean A. Black*, for appellant.

*James E. Cornwell, Jr., Solicitor, Thurbert E. Baker, Attorney General, Neal B. Childers, Senior Assistant Attorney General, Carol A. Callaway, Assistant Attorney General,* for appellee.