## S98A0595. THE STATE v. JOHNSON.

(507 SE2d 443)

THOMPSON, Justice.

This is a case of first impression in which we are asked to decide whether OCGA § 40-6-275 is unconstitutionally vague.[1] We find that the statute is unconstitutionally vague because the term "extensive property damage" is so indefinite that a person of reasonable understanding cannot know whether the law is being violated.

Defendant Johnny Johnson was driving a tractor-trailer northbound on Interstate 85 when he collided with a northbound automobile. The automobile came to a stop in the median emergency lane. It was not driveable.[2]

Johnson stopped his tractor-trailer approximately 200 feet north of the automobile, in the middle northbound lane. He exited the tractor-trailer and began placing warning devices behind it. A few minutes later, a northbound pickup truck ran into the back of Johnson's tractor-trailer. The three occupants of the pickup truck were killed.

Via accusation, Johnson was charged with three counts of vehicular homicide in the second degree. See OCGA § 40-6-393 (b). These charges were predicated on the alleged violation of OCGA § 40-6-275. Johnson moved to quash the accusation, asserting the unconstitutionality of OCGA § 40-6-275. The trial court found the statute unconstitutional and granted Johnson's motion to quash. The State appeals.

To withstand a vagueness attack, a statute " 'must so definitely and certainly define the offense that a person of reasonable understanding can know at the time of the commission of the act that the law is being violated.' [Cit.]" *Bilbrey v. State*, 254 Ga. 629, 631 (331 SE2d 551) (1985). OCGA § 40-6-275 fails to meet this test.

---

[1] OCGA § 40-6-275 applies to motor vehicle traffic accidents which occur on the expressways and multilane highways of this state. Subsection (c) of that statute reads:

When a motor vehicle traffic accident occurs with no personal injury, death, or extensive property damage, it shall be the duty of the drivers of the motor vehicles involved in such traffic accident, or any other occupant of any such motor vehicle who possesses a valid driver's license, to remove said vehicles from the immediate confines of the roadway into a safe refuge on the shoulder, emergency lane, or median or to a place otherwise removed from the roadway whenever such moving of a vehicle can be done safely and the vehicle is capable of being normally and safely driven, does not require towing, and can be operated under its own power in its customary manner without further damage or hazard to itself, to the traffic elements, or to the roadway. The driver of any such motor vehicle may request any person who possesses a valid driver's license to remove any such motor vehicle as provided in this Code section, and any such person so requested shall be authorized to comply with such request.

[2] Johnson's tractor-trailer struck the right side of the automobile, causing damage to the right front fender, wheel well, and door. The rim of the wheel was bent, and the tire was flat.

The statute requires the driver of a vehicle involved in a traffic accident on a multilane highway to move his vehicle out of harm's way unless the accident includes personal injury, death, or extensive property damage. OCGA § 40-6-275 (c). Thus, before removing a vehicle involved in an accident from the roadway, a driver must first ascertain whether any injuries or fatalities have occurred. If no injuries or fatalities occurred, he must then determine whether any vehicle has incurred "extensive property damage."

If no vehicle incurred extensive property damage the driver must remove his vehicle from the roadway to minimize the chance of further accidents. If, on the other hand, any vehicle has incurred extensive property damage, the driver must leave the vehicle where it comes to rest to facilitate the ensuing investigation. This puts a driver on the horns of a dilemma because the term "extensive property damage" can mean different things to different people: Does the term "extensive property damage" depend upon the quantity of physical damage to a vehicle? If so, what percentage of the vehicle must be damaged, ten percent, twenty percent, or fifty percent? Or does the term depend upon the part of the vehicle which is damaged? If so, must the damage be more than cosmetic; does damage to a fender and door suffice; or must the damage be to a mechanical part? Or, does the term "extensive property damage" depend upon the cost of repairs? If so, does the term mean the cost of repairs must exceed $500, $1,000, or $5,000? Reasonable people will differ in their approach to these questions — and the statute provides no answers. Thus, OCGA § 40-6-275 compels a driver who is involved in an accident and who believes in good faith that a vehicle has incurred "extensive" property damage, to leave his vehicle in the roadway at his peril, not knowing whether others will conclude that the damage was something less than "extensive." Such a statute cannot be said to " 'furnish a test based on normal criteria which men of common intelligence who come in contact with the statute may use with reasonable safety in determining its command.' [Cit.]" *Bilbrey v. State*, supra.

*Judgment affirmed. All the Justices concur, except Benham, C. J., Carley and Hines, JJ., who dissent.*

SEARS, Justice, concurring.

I agree with the majority opinion, and therefore concur in the judgment. I write, however, to emphasize that this case illustrates the danger created by a statute that prohibits the removal of vehicles involved in traffic accidents when there is personal injury, death, or extensive property damage. Before motorists may move their vehicles to places of safety under such a statute, they must determine whether there has been any extensive property damage to their vehi-

cles or other vehicles, as well as whether anyone in their vehicles or other vehicles has died or been injured. This burden is a nearly impossible one on a busy interstate or multilane highway, especially when there is a likelihood that the vehicles could come to rest a substantial distance from each other. The statute also effectively places more value on investigating and reconstructing accidents than on protecting the lives of motorists who will be approaching the accident scene. Tragedies that have occurred in an initial accident should not be compounded by tragedies that will result from failing to move the vehicles as quickly as possible. I therefore urge the General Assembly to enact a statute that requires motorists who have been involved in a traffic accident, regardless of the extent of the bodily injury or property damage, to remove their vehicles to a safe place whenever their vehicles are in operating condition and the removal can be accomplished safely.

I am authorized to state that Presiding Justice Fletcher joins in this concurrence.

BENHAM, Chief Justice, dissenting.

The majority does away with the statutory duty of motorists to remove vehicles involved in certain traffic accidents which occur on expressways and multi-lane highways by declaring unconstitutionally vague the statute which embodies that duty, OCGA 40-6-275 (c).[3] The majority believes OCGA § 40-6-275 (c) compels a driver involved in an accident on an expressway to leave his vehicle in the roadway if the driver thinks that a vehicle involved in the accident has suffered "extensive property damage." Because the majority believes that "extensive property damage" "can mean different things to different people[,]" the majority concludes that the statute which uses such a term must be unconstitutionally vague. I respectfully disagree with the majority's conclusion and with the analysis which leads to that conclusion. I would uphold the statute as a legislative reaffirmation of the duty of a motorist involved in an accident resulting in injury, death, or damage to another vehicle to stop immediately or as close to the scene as possible without obstructing traffic more than is necessary. OCGA § 40-6-270 (a). Accordingly, I respectfully dissent.

In the case at bar, the defendant was charged by accusation with three counts of homicide by vehicle (OCGA § 40-6-393 (b)) due to his alleged violation of his duty, set forth in OCGA § 40-6-275 (c), to

---

[3] The statute at issue is the basis for metropolitan Atlanta traffic reporters' admonishment: "If you can steer it, clear it," a shorthand reminder to drivers involved in traffic accidents of their duty to remove the collision from the roadway so as to permit traffic flow to resume.

remove his vehicle from the expressway following his tractor-trailer's collision with a passenger car during an allegedly improper lane change which Johnson attempted while traveling north on I-85 around 7:45 a.m. The passenger car stopped in the median emergency lane some 50-100 feet from the impact, and Johnson stopped his truck in the center lane of the expressway's three northbound lanes 250-300 feet from the accident site. OCGA § 40-6-275 mandates that the driver of a motor vehicle involved in a traffic accident on a multi-lane highway which does not result in death, personal injury, or extensive property damage move his vehicle from the roadway if it can be done safely and the vehicle is capable of being normally and safely driven. The defendant sought to quash the accusation and citations[4] on the ground that OCGA § 40-6-275 (c) violated his right to due process guaranteed by the federal and state constitutions because it was unconstitutionally vague. After a short hearing, the trial court opined that the statute was unconstitutionally vague and quashed the accusation and citations.

"The void for vagueness doctrine simply means that a person may not be held responsible for conduct which violates a rule where that person could not have reasonably understood that his contemplated conduct was proscribed [or mandated]. [Cit.]" *Poole v. State*, 262 Ga. 718, 719 (425 SE2d 655) (1993). Due process is violated when a statute is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. *Sliney v. State*, 260 Ga. 167 (391 SE2d 114) (1990). All that is required of a statute in order to withstand a vagueness challenge is that the language convey sufficiently definite warning as to the proscribed or mandated conduct when measured by common understanding and practices. *Douglas v. State*, 263 Ga. 748 (2) (438 SE2d 361) (1994); *Land v. State*, 262 Ga. 898 (1) (426 SE2d 370) (1993).

As an appellate court, we are bound by certain "rules" when a constitutional challenge to a statute or ordinance is properly before us. A solemn act of the legislature comes to court cloaked with a presumption of constitutionality. *State v. Brannan*, 267 Ga. 315, 317 (477 SE2d 575) (1996); *State v. Davis*, 246 Ga. 761 (1) (272 SE2d 721) (1980). We have a duty to construe a statute so as to uphold it as constitutional, if that is possible. *Garner v. Harrison*, 260 Ga. 866, 869 (400 SE2d 925) (1991). We are obliged to give statutory language a reasonable and sensible interpretation in order to carry out the legislative intent and render the statute valid. *Mayor &c. of Hapeville v. Anderson*, 246 Ga. 786, 787 (272 SE2d 713) (1980). It is only when a

---

[4] The defendant was also issued uniform traffic citations charging him with improper lane change and failure to remove his vehicle from the roadway.

statute "manifestly infringes upon a constitutional provision or violates the rights of the people" that the judicial branch should impede the operation of the statute by declaring it unconstitutional. *Miller v. State*, 266 Ga. 850 (2) (472 SE2d 74) (1996). Before we declare an act of a co-ordinate department of government unconstitutional, we must determine that the conflict between the act and the fundamental law is clear and palpable. *Lamons v. Yarbrough*, 206 Ga. 50, 57-58 (55 SE2d 551) (1949).

In examining a statute for vagueness, we must remember that the prohibition against vagueness "does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness for in most English words and phrases there lurk uncertainties. . . ." *Wilson v. State*, 245 Ga. 49, 53 (262 SE2d 810) (1980), quoting *Rose v. Locke*, 423 U. S. 48, 49 (96 SC 243, 46 LE2d 185) (1975). Cf. *Bohannon v. State*, 269 Ga. 130 (3) (497 SE2d 552) (1998), where we upheld a subsection of the DUI law against a vagueness challenge; *Johnson v. State*, 264 Ga. 590 (1) (449 SE2d 94) (1994), where aggravated stalking was found not to be unconstitutionally vague; *State v. Burch*, 264 Ga. 231 (443 SE2d 483) (1994), reaffirming that "loitering" and "prowling" were not unconstitutionally vague; and *Beck v. State*, 254 Ga. 51 (4) (326 SE2d 465) (1985), which upheld "serious bodily injury" against the contention that it was unconstitutionally vague. We must read the statute as a whole in order to determine the scope of prohibited or mandated activity. *Hargrove v. State*, 253 Ga. 450 (1) (321 SE2d 104) (1984).

The initial rule of statutory construction is to look diligently for the legislative intent. OCGA § 1-3-1 (a). From the uncodified preamble to the legislation from which OCGA § 40-6-275 was carved, we can ascertain that the Legislature enacted the statute with the intent of promoting safety on the crowded, fast-paced expressways of Georgia. The General Assembly first enacted the "duty to remove vehicle" statute in 1974, requiring motorists involved in traffic accidents on the expressways in the "Standard Metropolitan Statistical Areas" of Georgia to remove their vehicles from the roadway, if it could be done safely. The legislation was passed so that motor vehicles in accidents on the most-traveled portions of Georgia's expressways would not obstruct traffic. Ga. L. 1974, p. 969. In 1977, the Legislature amended the statute to broaden its coverage to all Georgia expressways and multi-lane highways, and to add the phrase with which we are concerned today, again with the goal of requiring motorists "to move such motor vehicles so as not to obstruct traffic. . . ." Ga. L. 1977, p. 742. Furthermore, since its inception, the statute has made the legislative concern for the safety of the motoring public paramount by providing that the duty to remove a vehicle

takes precedence over "any other law to the contrary. . . ." OCGA § 40-6-275 (a). Finally, when OCGA § 40-6-275 (c) is examined in light of other statutory duties which come into play when a motor vehicle accident occurs, one sees that OCGA § 40-6-275 (c) furthers the General Assembly's goal of removing from the roadway vehicles involved in certain traffic accidents. OCGA § 40-6-270 requires one involved in a motor vehicle accident that injures or kills someone or damages another vehicle to stop immediately or as close thereto as possible, with every such stop being made without obstructing traffic more than is necessary. Recognizing the danger presented by accidents on expressways and multi-lane highways due to the numbers of vehicles on such roadways and the high rates of speed at which they travel, the General Assembly reiterated its desire that vehicles involved in accidents there be removed from the roadway as quickly as possible.

The majority opinion and the concurrence assert that OCGA § 40-6-275 (c) "compels a driver . . . to leave his vehicle in the roadway" and "prohibits the removal of vehicles . . . when there is personal injury, death, or extensive property damage." I do not see that statute as prohibiting or compelling anyone to do anything. Instead, I see the statute as reaffirming for interstate and multi-lane highway motorists what the general statute, OCGA § 40-6-270 (a), requires: any driver of any vehicle involved in an accident resulting in injury, death or any damage to a vehicle must stop at the scene or as close thereto as possible without obstructing traffic more than is necessary, with the additional caveat that the removal be accomplished only if done safely by a licensed driver, with the vehicle operating under its own power and in the customary manner. Even if one construes OCGA § 40-6-275 (a) as prohibiting the removal of vehicles from the accident site where the accident resulted in personal injury, death, or extensive property damage, this exemption was likely enacted to preserve the scene until a law enforcement officer has made the measurements and diagrams necessary for the initial accident investigation. See, e.g., OCGA § 40-6-275 (g). Looking at the facts with which the defendant at bar was presented — the other vehicle is off the roadway 50-100 feet from the accident scene; his vehicle is 250-300 feet from the accident site and is capable of being normally and safely driven; and he is in the middle of an expressway with a posted speed limit of 70 mph — I cannot agree that the judicial standards which govern a vagueness challenge are met here, i.e., that the "common understanding and practices" of "persons of common intelligence" would lead the reasonable person to believe that the law required him to leave his vehicle stopped in the middle of the expressway. Even if death, injury or "extensive physical damage" had resulted, because neither vehicle was at the accident scene, there

was no accident scene to preserve and no reason to stop an undamaged vehicle in the middle of the expressway.

Because the majority has declared OCGA § 40-6-275 unconstitutional on its face and because I believe that the statute is not void for vagueness when applied to the facts of this case, I must respectfully dissent.

I am authorized to state that Justice Carley and Justice Hines join this dissent.

DECIDED OCTOBER 19, 1998 —
RECONSIDERATION DENIED NOVEMBER 5, 1998.

*John H. Cranford*, Solicitor, *Robert Stokely*, Assistant Solicitor, for appellant.

*Wood, Odom & Edge, Gus L. Wood III, Walter W. Arnall*, for appellee.