## 41765. BECK v. THE STATE.
(326 SE2d 465)

WELTNER, Justice.

Beck and Ashley forced entry into the home of their former employer, shot and killed him with a pistol, robbed him of a sum of money, and fled. Both were apprehended. Ashley confessed, and Beck made incriminating statements concerning the murder weapon, which he had taken from his mother's home, and a $100 bill, which he had taken from the victim's home.

Ashley pleaded guilty and was sentenced to life imprisonment. Beck was tried for murder, armed robbery, and burglary. The jury returned the following verdict: "We, the Jury find the Defendant Eli Beck, guilty of malice murder, guilty of armed robbery, and guilty of burglary." He was convicted on each count, and thereafter was sentenced to death.[1]

---

[1] The crime was committed on January 16, 1984. Beck was convicted on July 18, 1984. He filed a motion for new trial on July 23, 1984, which was voluntarily dismissed on November 1, 1984. He filed his notice of appeal on November 1, 1984. The transcript was filed in the superior court on November 9, 1984, and the appeal docketed in this court on November 21,

Because the death sentence must be set aside, we will consider on this appeal principally those enumerations of error which relate to Beck's conviction.

1. The trial court did not err in refusing to set bond in any amount, upon a finding that Beck might flee the jurisdiction, or might be of danger to the community. *Lane v. State*, 247 Ga. 387 (276 SE2d 644) (1981).

2. The trial court did not err in refusing to grant a change of venue by reason of pre-trial notoriety. Only seven veniremen were excused because of the possible impact of publicity. "[A] trial court's finding that a defendant can receive a fair trial in the county in which the crime was committed will be upheld unless manifestly erroneous." *Devier v. State*, 253 Ga. 604, 609 (323 SE2d 150) (1984).

3. The trial court did not err in failing to grant funds for a challenge to the array of the grand jury, based upon an alleged under-representation of persons between 18 to 30 years of age. We have held consistently that this is not a discernible class. *White v. State*, 230 Ga. 327 (1) (196 SE2d 849) (1973); *Orkin v. State*, 236 Ga. 176, 190 (223 SE2d 61) (1976); *Couch v. State*, 253 Ga. 764 (325 SE2d 366) (1985). Hence, mathematical calculations derived from such an analysis would be immaterial.

4. There is no merit in Beck's contention, relative to that count of the indictment brought under OCGA § 16-8-41 (b) that the term "serious bodily injury" is unconstitutionally vague. *Peek v. State*, 239 Ga. 422 (238 SE2d 12) (1977). Further, inasmuch as the sentence upon the robbery count is to be imposed by the trial judge under our statutory scheme, a finding by the trial judge of the fact of serious bodily injury (the statute requires it to be "found to be true by the court") does not deprive Beck of any jury determination to which he is entitled.

5. The absence of the term "therein" in the count of the indictment charging Beck with burglary (that he entered the dwelling house of another "with the intent to commit a felony or theft") does not render the indictment fatally defective. *DePalma v. State*, 225 Ga. 465 (169 SE2d 801) (1969).

6. The trial court instructed the jury relative to the elements of malice murder and felony murder, and declined to submit to the jury in interrogatory form a special verdict wherein the jury would designate whether the defendant was guilty of felony murder and to specify whether Beck did, or did not, attempt to kill or intend to kill the victim. As these elements of the charge were correct, we find no error.

7. The trial court denied a motion to suppress evidence seized

1984. The case was argued on January 22, 1985.

under a warrant, finding that the warrant was supported by probable cause. As these findings are not clearly erroneous, there was no error. *Dean v. State*, 250 Ga. 77 (295 SE2d 306) (1982).

8. After conducting a Jackson-Denno hearing, the trial court found that Beck's statements while in custody were made voluntarily. A review of the record establishes that this finding was not clearly erroneous, and this enumeration is without merit. *Powell v. State*, 252 Ga. 297 (313 SE2d 90) (1984).

9. Photographs of the crime scene were not unduly prejudicial, inasmuch as they reflected the result of the homicide, robbery, and burglary. No autopsy photographs were admitted. *Brown v. State*, 250 Ga. 862 (302 SE2d 347) (1983).

10. During the guilt-innocence phase of the trial, Beck sought to introduce evidence of extrajudicial statements made by Ashley which indicated that Ashley had fired the murder weapon. (These statements were admitted, in mitigation, at the sentencing phase.) There was no foundation under the rule laid down in *Gibbons v. State*, 253 Ga. 283 (319 SE2d 861) (1984), and the exclusion of the statements by the trial court was not error.

11. The trial court did not err in excluding from evidence letters written by Beck, which were later seized by law enforcement authorities, as they were merely self-serving declarations. *Dickey v. State*, 240 Ga. 634 (242 SE2d 55) (1978).

12. Over objection, the district attorney asked Beck on cross-examination: "In a physical confrontation do you believe you could handle Mrs. Porter?" The district attorney referred to Ashley also in cross-examination, as a "bloodthirsty person."

A party is entitled to a thorough and sifting cross-examination. *Casey v. State*, 249 Ga. 724 (293 SE2d 321) (1982). Part of Beck's defense was that Ashley had forced him to engage in the crime, and then — without warning — Ashley shot the victim. Beck also had testified that the plan was that the victim and his wife would be subdued, not killed. Inasmuch as the inquiry and the reference were made during cross-examination of Beck, there was no error.

13. While not enumerated as error, we have reviewed the record in this case and find that the evidence is amply sufficient to enable a rational trier of fact to find Beck guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Enmund v. Florida*, 458 U. S. 782 (102 SC 3368, 73 LE2d 1140) (1982). The convictions are affirmed.

14. Nonetheless, we find it necessary to vacate the sentence of death, and to return the case for a new trial as to sentence.

OCGA § 17-10-2 (a) provides in part that, excepting cases in which the death penalty may be imposed, the trial judge, upon return of a guilty verdict, shall hold a pre-sentence hearing for the purpose

of determining punishment. "In the hearing the judge shall hear additional evidence in extenuation, mitigation, and aggravation of punishment. . . . The judge shall also hear argument by the defendant or his counsel and the district attorney, as provided by law, regarding the punishment to be imposed. The district attorney shall open and the defendant or his counsel shall conclude the argument." OCGA § 17-10-2 (c) provides in part that in cases where the death penalty may be imposed, "[t]he hearing shall be conducted in the same manner as pre-sentence hearings conducted before the judge as provided for in sub-section (a) of this Code section."

Beck called several witnesses on his behalf at the sentencing hearing. On conclusion of the evidence, the trial court, over the objection of defense counsel, directed that the state would have the opportunity to open and to conclude the argument.

Beck assigns this as error. The state contends that the above provisions must be read in connection with OCGA § 17-8-71, which provides: "After the evidence is closed on both sides, the prosecuting attorney shall open and conclude the argument to the jury. If the defendant introduces no evidence, his counsel shall open and conclude the argument to the jury after the evidence on the part of the state is closed."

Because Beck presented evidence as to sentence, the state contends he lost his right to the concluding argument. With this we cannot agree. OCGA § 17-10-2 (a) requires a hearing for the purpose of "additional evidence in extenuation, mitigation, and aggravation of punishment." Plainly, this contemplates that a defendant might offer evidence in extenuation and mitigation. At the same time, it allocates to the defendant the right to conclude the argument, without reference to the circumstances outlined in OCGA § 17-8-71, supra.

"This right to open and conclude when the defendant introduces no evidence has been the law of this State since January 22, 1852 (Ga. L. 1851-52, p. 242; [OCGA § 17-8-71]). It is a substantial procedural right and has many advantages. It is available to all.

"This defendant was entitled to a trial in accordance with law, which included the exercise of this right.

"Speculation as to whether its denial was prejudicial to him has no place here. In this instance the death penalty was imposed. It cannot be said that the error was harmless." *Park v. State*, 224 Ga. 467, 480-481 (162 SE2d 359) (1968).

Accordingly, the sentence must be vacated, and the case remanded for a new sentence trial.

15. Because of the foregoing disposition, we need not comment upon the district attorney's remarks to the jury concerning the possibility for parole. We note, however, that this is dangerous ground.

*Judgment affirmed in part and reversed in part. All the Justices*

*concur, except that with respect to Division 4, Hill, C. J., concurs in the judgment only.*

DECIDED FEBRUARY 27, 1985.

*Fitzpatrick & Mullis, W. Dennis Mullis,* for appellant.
*James L. Wiggins, District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr.,* for appellee.