46825, 46937, 47020. ZANT v. BECK (three cases).
(386 SE2d 349)

Weltner, Justice.

After a successful appeal to this court,[1] Eli Beck was sentenced to death for a second time. We affirmed the sentence,[2] and certiorari to the United States Supreme Court was denied.[3] Upon his petition for a writ of habeas corpus, the conviction was upheld, but the second death sentence was set aside. Both parties seek review.

1. (a) As to the guilt phase of the trial, the habeas court found that Beck was mentally retarded at the time of the trial, and that for want of intellectual capacity his statements were not voluntary because he did not waive knowingly and intelligently his right to remain silent. However, finding that the evidence of Beck's guilt was overwhelming, the court held that the admission of the statements was harmless.

(b) As to the consideration of the statements by the jury in the sentencing phase, the court felt compelled to grant relief, holding as follows:

> Therefore, in applying the "harmless error" standard espoused in *Chapman v. California,* 386 U. S. 18, 17 L. Ed. 2d 705 [87 SC 824] (1967), as it was applied in *Smith v, Zant,* 855 F. 2d 705, to the facts of this case, it is "impossible to conclude beyond a reasonable doubt that the improperly admitted confession[s] did not influence the sentencing jury."

---

[1] *Beck v. State,* 254 Ga. 51 (326 SE2d 465) (1985).
[2] *Beck v. State,* 255 Ga. 483 (340 SE2d 9) (1986).
[3] *Beck v. Georgia,* 479 U. S. 870 (107 SC 242, 93 LE2d 167) (1986).

[Id. at 722.]

(c) The warden insists that the consideration of voluntariness by the habeas corpus court is precluded because the same issue has been decided adversely to Beck in his first appeal.[4]

2. (a) Prior to the initial trial, a *Jackson-Denno* hearing was held, at which defense counsel contended that Beck's statements were made as a result of coercion by law enforcement authorities. Additionally, the original motion to suppress recited that the statements were made by Beck in the "absence of counsel, without an intelligent and knowing waiver of counsel. . . ."

(b) Beck now contends that the express contention of intellectual deficiency was not addressed at trial or on prior appeals, and that, for this reason, his present contentions are not successive.

(c) We disagree. Clearly, the issue of voluntariness was put in issue at trial, and the trial court's findings were affirmed on appeal. Beck's latter contentions are simply another aspect of voluntariness. As such, they have been subsumed in prior rulings, and are successive. See *Gunter v. Hickman*, 256 Ga. 315 (1) (348 SE2d 644) (1986). Accordingly, that portion of the judgment is vacated, and the death sentence is reinstated.

3. (a) Notwithstanding the reinstatement of sentence, the findings of the habeas corpus court as to Beck's intellectual capacity serve to gain for him a measure of relief. That court made the following observations:

> Through affidavit, counsel for Petitioner has submitted evidence of the fact that Petitioner is a mildly retarded individual having "significantly subaverage general intellectual and adaptive functioning." Affidavit of Dr. June Kaufman. . . . Dr. Kaufman states further: "The level of impairment is such that [mildly retarded individuals] cannot function independently in the community and the impairment is so great that 99% of the population functions at a higher level. . . ." Dr. Kaufman further concludes that "the wording of the *Miranda* warning is of an abstract nature such that when Mr. Beck read such a warning [he] did not, in all likelihood, fully comprehend many of the words and concepts embodied therein."

---

[4] See *Beck v. State*, 254 Ga. at 53: "After conducting a Jackson-Denno hearing, the trial court found that Beck's statements while in custody were made voluntarily. A review of the record establishes that this finding was not clearly erroneous, and this enumeration of error is without merit."

(b) In *Fleming v. Zant*, 259 Ga. 687 (386 SE2d 339) (1989), we held that the enactment of OCGA § 17-7-131 reflects the existence of a consensus within this state against the execution of mentally retarded persons. In the light of that consensus, we held that the Georgia prohibition of "cruel and unusual punishments" would prohibit the execution of a retarded person, and that this prohibition would continue so long as the consensus remained unchanged. The procedure we established for the post-conviction address of claims relating to mental retardation provided for remand to the habeas corpus court to determine whether the petitioner has presented sufficient credible evidence, which must include at least one expert diagnosis of mental retardation, to create a genuine issue regarding the petitioner's retardation. Upon such a finding, the case then would be transferred to the trial court for a jury determination of the issue of mental retardation *vel non.*[5]

(c) The findings of the habeas corpus court concerning Beck's intellectual capacity have resolved the initial inquiry, as outlined in *Fleming,* supra. Accordingly, the case is remanded directly to the trial court for a jury trial on the issue of mental retardation.

4. Beck contests the denial of the other relief sought by his petition for habeas corpus. We have reviewed his contentions, and find no error.

*Judgment reversed in Case No. 46825 and case remanded. All the Justices concur, except Marshall, C. J., and Smith, J., who dissent. Judgment affirmed in Case Nos. 46937 and 47020. All the Justices concur.*

SMITH, Justice, dissenting.

My reasons are set forth in detail in my dissent to case number S89A0241. *Fleming v. Zant*, 259 Ga. 687 (386 SE2d 339) (1989).

DECIDED DECEMBER 4, 1989 —
RECONSIDERATION DENIED DECEMBER 20, 1989.

*Michael J. Bowers, Attorney General, Paula K. Smith, Assistant Attorney General,* for appellant.

---

[5] See *Fleming,* supra, p. 757. The date of the order of the habeas corpus court antedated this holding by nine months, while the statute prohibiting the execution of mentally retarded persons had been in effect for almost a year before the date of the order. Obviously, the habeas corpus court could not have foreseen the remand procedure prescribed in *Fleming.* We commend the habeas corpus court for its concern that the public consensus declared in OCGA § 17-7-131 should not be swept aside lightly on procedural grounds.

*Gary A. Barnes, Martin M. Shoemaker,* for appellee.