## A99A2261. CARTWRIGHT v. THE STATE.
### (531 SE2d 399)

PHIPPS, Judge.

Darrell Dewayne Cartwright was indicted for rape, statutory rape and aggravated sodomy.[1] A jury found him guilty of forcible rape and aggravated sodomy. He appeals, raising three enumerations of error. He asserts that the trial court erred by admitting evidence of a similar transaction for which he was acquitted and by allowing the State to prove the similar transaction with the detective's rendition of the victim's statement. He also claims that the evidence demanded a verdict of guilty but mentally retarded on each count.

We find that the similar transaction was a proper subject of evidence and that the jury was authorized to find Cartwright guilty instead of guilty but mentally retarded. We find that the trial court committed reversible error, however, when it allowed the State to prove the similar transaction through the officer's hearsay testimony recounting the complainant's statement, because it was not shown that she was unavailable to testify and her statement was not part of the res gestae.

On August 16, 1995, a man identifying himself as Shawn Norman, later determined to be thirty-one-year-old Cartwright, initiated a three-way phone conversation with fourteen-year-old L. D. and her friend. Eventually, L. D.'s friend quit the conversation, and L. D. and Cartwright continued talking. During their conversation, Cartwright learned where L. D. lived and asked if he could come to her home. L. D. told him, "No," but the next day, while L. D. was home alone, he went over anyway. When he knocked on the door, L. D. stood speechless for a while but eventually opened the door because Cartwright threatened to kill her if she did not. When L. D. opened the door, Cartwright pushed himself inside. Then Cartwright forcibly per-

---

[1] The indictment captioned "Rape" contains the elements for both forcible rape and statutory rape.

formed oral sodomy on L. D. and had sexual intercourse with her forcibly and against her will. After a schoolmate of L. D.'s arrived with her family, Cartwright left on a bicycle.

1. The State sought to present evidence that two years before this occurrence, Cartwright had raped and sodomized another fourteen-year-old girl, S. H., under similar circumstances. S. H. was now a student at an out-of-town college, and, through her mother, she informed the prosecutor that she did not wish to testify at this trial. Also, her mother did not want S. H. to testify. On one occasion, an investigator for the prosecutor's office went to S. H.'s parents' home with a subpoena for her. She was not at home and her stepfather would not put the investigator in contact with her. After hearing evidence, the court determined that the State had not shown that S. H. was unavailable to testify at trial.

Nevertheless, under the res gestae exception to the hearsay rule, the court allowed the State to present a statement that S. H. made to a detective at the police station an hour and one-half to two hours after the incident. This statement was made after she had spoken with her parents, who brought her to the police station, and with another officer. According to the detective, S. H. stated that Cartwright called her for several days using a false name, asked her if he could come to her home, came over one day when she was alone, despite having been told by her that she did not want him to come, raped her inside her home and left the scene on a bicycle.

(a) Cartwright was tried for and acquitted of forcible rape in the S. H. case. He asserts that under the Fifth Amendment protection from double jeopardy the State was collaterally estopped from presenting evidence of that matter in this trial. The trial court determined that collateral estoppel did not bar evidence of the prior incident because statutory rape was in issue in this trial whereas it was not an issue in the prior trial. In the time between these two incidents, the statutory age of consent increased from fourteen to sixteen. Consequently, while consensual intercourse with fourteen-year-old S. H. was not criminal, it was criminal with respect to fourteen-year-old L. D.

Collateral estoppel places limits on the extent to which evidence of allegedly criminal conduct may be reused against a defendant where he has already been tried and acquitted of the crime.

"[T]he application of collateral estoppel requires an examination of what facts were in issue and necessarily resolved in the defendant's favor at the first trial." [*Moore v. State*, 254 Ga. 674, 676 (333 SE2d 605) (1985).] . . . [I]t must be determined whether an issue that *was* in dispute in the previous trial — and resolved in the defendant's favor — is

what the state is now trying to establish in *this* trial, notwithstanding the previous acquittal.[2]

In *Salcedo v. State*,[3] the defendant was tried for burglary based on allegations that he had entered the complainant's home early one morning, partially clothed, and held her down on her bed before she managed to escape. In a previous case, the defendant had been tried in Florida for sexual battery (comparable to rape in Georgia), burglary and criminal trespass. There, it had been alleged that he entered a woman's home one morning and raped her. The defendant asserted the intercourse was consensual, and he was acquitted of rape and burglary and convicted only of criminal trespass. The Supreme Court of Georgia held that evidence of the prior transaction could not be admitted in the trial of the subsequent transaction because the issue of forcible intercourse had been resolved in the defendant's favor in the first trial.[4]

Both the prosecution and the defense represent that Cartwright defended himself in the S. H. trial on a theory of consent, and a statement of Cartwright's introduced at the S. H. trial is consistent with that.

Here, at Cartwright's request, the court included in its final charge to the jury, "[t]he defendant contends that there was no rape and that the intercourse with the alleged female victim was with the consent of the female freely and voluntarily given." But the record indicates that at the time the court admitted the similar transaction evidence, the identity of the perpetrator was also an issue in this case. Immediately before trial, when offered an opportunity to plead guilty to one count of statutory rape, Cartwright pled not guilty, saying, "I ain't done it." Cartwright's position suggested a denial of any type of intercourse with L. D.

Identity was one of the purposes for which the State sought to introduce evidence of the prior transaction. It asserted that the modus operandi of the prior transaction was so distinctively similar to that in this case that evidence of the prior matter aided in proving Cartwright was the perpetrator of the present offenses. That use of the prior transaction evidence was proper and not foreclosed by collateral estoppel. We find that evidence of the prior transaction was admissible.

(b) Finding that it was part of the res gestae, the trial court

[2] (Emphasis in original.) *Salcedo v. State*, 258 Ga. 870-871 (376 SE2d 360) (1989); accord *Moore v. State*, 254 Ga. 674 (333 SE2d 605) (1985); *Felker v. State*, 252 Ga. 351, 361-362 (1) (b) (314 SE2d 621) (1984).

[3] Supra.

[4] Id. at 871.

allowed the State to prove the similar transaction by introducing the hearsay statement of the victim who was not shown to be unavailable to testify. "Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or after-thought, shall be admissible in evidence as part of the res gestae."[5] There are no concrete boundaries for statements that will qualify as res gestae, but the hallmark is that the statement is spontaneous and so devoid of premeditation and reflection that it " 'spring[s] out of the transaction' "[6] and is " 'free from all suspicion of device or after-thought.' "[7]

There was a lengthy interval between the incident at S. H.'s home and her interview at the police station. Her statement was nar-rative, which " 'is apt to carry with it the impress of afterthought.' "[8] Before she gave the statement, she had spoken with her parents and another officer. The detective who interviewed S. H. testified that she was giggling during the interview and that he cautioned her about making a false report of a crime. We have found no Georgia case in which a narrative statement given to a police officer at a police sta-tion has qualified as res gestae. And the State has cited no such case. Considering the circumstances surrounding the taking of this state-ment, we find that the trial court's determination that S. H.'s state-ment was admissible as part of the res gestae was clearly erroneous.[9]

(c) The State asserts that even if the admission of S. H.'s state-ment was erroneous, it was harmless in light of the overwhelming weight of the evidence against Cartwright. The test is whether it is highly probable that the error did not contribute to the verdict.[10]

> If the error is relevant to the issues in dispute, not cumula-tive of other evidence, not beneficial to the defendant and uncorrected by the trial court, then there is perhaps no rea-son for saying it is harmless, but it may nevertheless be harmless in the context of the entire case.[11]

Where the evidence of the defendant's guilt is overwhelming, we

---

[5] OCGA § 24-3-3.

[6] (Citation omitted.) *Nasworthy v. State*, 169 Ga. App. 603, 604 (2) (314 SE2d 446) (1984).

[7] (Citation omitted.) *Wilbourne v. State*, 214 Ga. App. 371, 372-373 (1) (448 SE2d 37) (1994).

[8] *Nasworthy*, supra.

[9] See id. at 605 (clearly erroneous standard).

[10] *Richards v. State*, 222 Ga. App. 853, 856 (3) (476 SE2d 598) (1996); *Williams v. State*, 144 Ga. App. 130, 133 (2) (240 SE2d 890) (1977) (each citing *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976)).

[11] *Johnson*, supra.

have found errors in the admission of evidence to be harmless.[12]

Here, there is no question that evidence of the S. H. matter was relevant, not cumulative of other evidence in the case, not beneficial to Cartwright and uncorrected by the court. The question then becomes whether the properly admitted evidence of his guilt was overwhelming. Evidence of Cartwright's guilt was presented through the testimony of L. D. and those who encountered her immediately after this incident. However, we cannot say that the evidence against him was so overwhelming that it was highly probable that the error did not contribute to the jury's verdict.

Despite L. D.'s testimony of threats to kill her, she admitted Cartwright into the home. Despite her testimony that he pushed her from room to room and that they struggled, there was no sign of struggle inside the home. L. D.'s clothing was not damaged. And L. D. had suffered no injuries clearly attributed to Cartwright. While these matters are not necessary to convict for rape or aggravated sodomy, we cannot say that the evidence as to Cartwright's guilt was so overwhelming that the erroneous admission of highly prejudicial hearsay similar transaction evidence was harmless.

Moreover, the S. H. matter also was significant to the jury's determination on whether Cartwright was guilty or not guilty but mentally retarded. We cannot conclude that it is highly improbable that this evidence did not affect that determination.

2. Cartwright asserts the jury should have found him guilty but mentally retarded because he presented expert testimony that he was mildly retarded and the State did not present expert testimony in rebuttal. The defendant bears the burden of proving his mental retardation or mental illness beyond a reasonable doubt.[13] While the jury could not arbitrarily ignore the testimony from Cartwright's expert,[14] it was authorized to consider all evidence in the case that reflected upon Cartwright's mental condition.[15]

We do not find the expert's testimony so overwhelming that it compelled a finding that Cartwright was mentally retarded.[16] While the expert noted that there are many considerations in assessing whether a person is mentally retarded, his diagnosis of Cartwright appeared to be based primarily on intelligence quotient test performance. He testified that Cartwright had scored as low as 50 on an IQ test in 1981 but had scored 70 when tested in connection with this case. The expert further testified that 70 is the borderline between

---

[12] See, e.g., *Richards*, supra.
[13] *Pittman v. State*, 269 Ga. 419, 420 (499 SE2d 62) (1998); OCGA § 17-7-131.
[14] *Brown v. State*, 250 Ga. 66, 71 (2) (c) (295 SE2d 727) (1982).
[15] See *Pittman*, supra.
[16] See *Brown*, supra.

low intellectual functioning and mild mental retardation. Viewing the evidence in the light most favorable to the State, a rational trier of fact could have concluded that Cartwright failed to meet his burden of proving mental retardation or mental illness at the time of the crime.[17]

Because in Division 1 we find that the manner in which the similar transaction was admitted was clearly erroneous and harmful error, we reverse.

*Judgment reversed. Johnson, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 16, 2000.

*L. Elizabeth Lane*, for appellant.

*Charles H. Weston, District Attorney, Graham A. Thorpe, Howard Z. Simms, Assistant District Attorneys*, for appellee.