WERDEGAR, J., Concurring.
As the majority recognizes, the United States Supreme Court held in Graham v. Florida (2010) 560 U.S. 48,_[176 L.Ed.2d 825, 130 S.Ct. 2011, 2034] (Graham) that “[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term.” Consequently, I concur in the majority’s holding that, consistent with Graham, “sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender’s natural life expectancy constitutes cruel and unusual punishment in violation of the Eighth Amendment.” (Maj. opn., ante, at p. 268.) In so holding, however, we are extending the high court’s jurisprudence to a situation that court has not had occasion to address.
Recently, the United States Supreme Court addressed a different aspect of this issue: juvenile offenders who commit homicide offenses. (Miller v. *270 Alabama (2012) 567 U.S._[183 L.Ed.2d 407, 132 S.Ct. 2455] (Miller).) Miller concluded that even for juvenile homicide offenders, a mandatory sentence of life imprisonment without the possibility of parole violates the proportionality requirement of the Eighth Amendment to the United States Constitution because it requires “that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes.” (Miller, 567 U.S. at p. _ [132 S.Ct. at p. 2475].) For homicide offenses, then, Miller eschewed the “categorical bar” on life without parole sentences imposed in Graham (Miller, 567 U.S. at p._[132 S.Ct. at p. 2465]), and instead left open the possibility that juvenile murderers could, in a sentencing court’s discretion, be sentenced to spend the rest of their lives in prison with no hope of parole (short of a grant of executive clemency).
Defendant Rodrigo Caballero was 16 years old, and thus a juvenile, when he committed his crimes. In light of Miller, we must first decide whether he committed a homicide or a nonhomicide offense. The jury convicted defendant of three counts of attempted premeditated and deliberate murder. (Pen. Code, § 664, subd. (a).) Two of his victims escaped physical injury completely, while one was injured but survived the shooting. As Graham explains, such “[sjerious nonhomicide crimes ‘may be devastating in their harm . . . but “in terms of moral depravity and of the injury to the person and to the public,” . . . they cannot be compared to murder in their “severity and irrevocability.” ’ [(Quoting Kennedy v. Louisiana (2008) 554 U.S. 407, 438 [171 L.Ed.2d 525, 128 S.Ct. 2641].)] This is because ‘[l]ife is over for the victim of the murderer,’ but for the victim of even a very serious nonhomicide crime, ‘life ... is not over and normally is not beyond repair.’ [(Quoting Coker v. Georgia (1977) 433 U.S. 584, 598 [53 L.Ed.2d 982, 97 S.Ct. 2861] (plur. opn.).)] Although an offense like robbery or rape is ‘a serious crime deserving serious punishment,’ [citation], those crimes differ from homicide crimes in a moral sense.” (Graham, supra, 560 U.S. at p._[130 S.Ct. at p. 2027].) Because the crime of attempted murder, even when premeditated and deliberate, does not rise to the severity or irrevocability of actually taking another’s fife, it must be classified as a nonhomicide offense within the meaning of Graham.[1] (See Manuel v. State (Fla.Dist.Ct.App. 2010) 48 So.3d *271 94, cert. den. sub nom. Florida v. Manuel (2011) 565 U.S._[181 L.Ed.2d 259, 132 S.Ct. 446] [finding attempted murder a nonhomicide offense under Graham].) Like the majority, therefore, I conclude this case falls within Graham’s categorical bar prohibiting life without parole sentences for juveniles who commit nonhomicide offenses.
Because Graham imposes a “flat ban” on such sentences (Miller, supra, 567 U.S. at p. _ [132 S.Ct. at p. 2465]), we must next determine whether defendant’s sentence of 110 years to life is the legal equivalent of life without parole. Although respondent appears to concede that defendant’s sentence is the functional equivalent of a life without parole term, they nevertheless argue his sentence is distinguishable from the sentence prohibited in Graham because it is comprised of component parts that only when added together constitute a term longer than a person can serve in a normal lifetime. For this purported distinction they cite comments from the Graham dissenters. (See Graham, supra, 560 U.S. at p._, fn. 11 [130 S.Ct. at p. 2052, fn. 11] (dis. opn. of Thomas, J.) [opining that the Graham majority “excludes from its analysis all juveniles sentenced to lengthy term-of-years sentences (e.g., 70 or 80 years’ imprisonment)”]; id. at p._[130 S.Ct. at p. 2058] (dis. opn. of Alito, J.) [“Nothing in the Court’s opinion affects the imposition of a sentence to a term of years without the possibility of parole.”].)
Characterization by the Graham dissenters of the scope of the majority opinion is, of course, dubious authority (see Glover v. Board of Retirement (1989) 214 Cal.App.3d 1327, 1337 [263 Cal.Rptr. 224] [the ‘“majority opinion of the Supreme Court states the law and ... a dissenting opinion has no function except to express the private view of the dissenter’ ”]), but in any event the purported distinction between a single sentence of life without *272 parole and one of component parts adding up to 110 years to life is unpersuasive. The gist of Graham is not only that life sentences for juveniles are unusual as a statistical matter, they are cruel as well because “developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds” (Graham, supra, 560 U.S. at p._ [130 S.Ct. at p. 2026]), “[j]uveniles are more capable of change than are adults, and their actions are less likely to be evidence of ‘irretrievably depraved character’ than are the actions of adults” (ibid.), and that accordingly, “ ‘a greater possibility exists that a minor’s character deficiencies will be reformed’ ” (id. at pp. - [130 S.Ct. at pp. 2026-2027]).
Further, the high court in Graham noted that, “[w]ith respect to life without parole for juvenile nonhomicide offenders, none of • the goals of penal sanctions that have been recognized as legitimate—retribution, deterrence, incapacitation, and rehabilitation [citation]—provides an adequate justification.” (Graham, supra, 560 U.S. at p. _ [130 S.Ct. at p. 2028].) First, although “ ‘[t]he heart of the retribution rationale is that a criminal sentence must be directly related to the personal culpability of the criminal offender’ ” (ibid.), this concern applies equally whether the sentence is one of life without parole or a term of years that cannot be served within the offender’s lifetime. Second, society’s interest in deterring socially unacceptable behavior by imposing long sentences does not justify sentences of life without parole for juvenile nonhomicide offenders “[b]ecause juveniles’ ‘lack of maturity and underdeveloped sense of responsibility . . . often result in impetuous and ill-considered actions and decisions,’ [citation], [such that] they are less likely to take a possible punishment into consideration when making decisions.” (Id. at pp. - [130 S.Ct. at pp. 2028-2029].) Third, although lifetime incapacitation will admittedly prevent criminals from reoffending, imposing that severe punishment on juvenile nonhomicide offenders labels them as incorrigible and incapable of change, and thus denies to them “a chance to demonstrate growth and maturity.” (Id. at p. _ [130 S.Ct. at p. 2029].) These concerns remain true whether the sentence is life without parole or a term of years exceeding the offender’s life expectancy.
The fourth consideration mentioned by the Graham court—rehabilitation—is perhaps the most salient factor as applied to underage offenders. As Graham explained: “A sentence of life imprisonment without parole . . . cannot be justified by the goal of rehabilitation. The penalty forswears altogether the rehabilitative ideal. By denying the defendant the right to reenter the community, the State makes an irrevocable judgment about that person’s value and place in society. This judgment is not appropriate in light of a juvenile nonhomicide offender’s capacity for change and limited moral culpability.” (Graham, supra, 560 U.S. at pp. - [130 *273 S.Ct. at pp. 2029-2030].) Like a sentence of life without parole, a prison sentence of such length that it cannot be served within an offender’s lifetime similarly denies his or her “right to reenter the community” (ibid.), and so equally implicates Graham’s reasoning that concerns over rehabilitation cannot justify a lifetime of imprisonment for nonhomicide juvenile offenders.
Although the facts of this case differ from those in Graham in that defendant was not sentenced to a single term of life without parole, I agree with the majority that Graham applies. Because defendant committed three nonhomicide crimes while still a juvenile and was sentenced to the functional equivalent of life in prison with no possibility of parole, he is entitled to the benefit of what Miller termed Graham’s “categorical bar” {Miller, supra, 567 U.S. at p._[132 S.Ct. at p. 2465]) on sentences of life in prison with no “meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation” (Graham, supra, 560 U.S. at p. _ [130 S.Ct. at p. 2030]). I also agree that the Legislature is an appropriate body to establish a mechanism to implement Graham’s directives for the future (maj. opn., ante, at p. 269, fn. 5), and that “every case will be different . . .” (id. at p. 269). But irrespective of whether the Legislature, in the future, steps in to enact procedures under which juveniles in defendant’s position may be resentenced, the trial court in this case must resentence defendant to a term that does not violate his rights. (See In re Hawthorne (2005) 35 Cal.4th 40 [24 Cal.Rptr.3d 189, 105 P.3d 552] [affording the defendant relief under Atkins v. Virginia (2002) 536 U.S. 304 [153 L.Ed.2d 335, 122 S.Ct. 2242] when his case did not qualify for the preconviction proceedings set forth in Pen. Code, § 1376].)[2] Accordingly, I would provide the lower court greater guidance on remand in this case, for we have before us a defendant on whom an unconstitutional sentence was pronounced. That violation must be remedied. Graham does not require defendant be given a parole hearing sometime in the future; it prohibits a court from sentencing him to such a term lacking that possibility at the outset. Therefore, I would remand the case to the trial court with directions to resentence defendant to a term that does not violate his constitutional rights, that is, a sentence that, although undoubtedly lengthy, provides him with a “meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.” (Graham, 560 U.S. at p._[130 S.Ct. at p. 2030].)
*274 With those caveats in mind, I concur in the majority’s decision to reverse the judgment of the Court of Appeal.
Liu, J., concurred.

 Graham itself is not crystal clear on this point. As respondent points out, Graham at one point says, “[t]he Court has recognized that defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers.” (Graham, supra, 560 U.S. at p._[130 S.Ct. at p. 2027], italics added.) Here, defendant’s convictions for attempted murder necessarily demonstrate the jury found he acted with the intent to kill. (People v. Gonzalez (2012) 54 Cal.4th 643, 653 [142 Cal.Rptr.3d 893, 278 P.3d 1242].)
Graham also relied heavily on a scholarly paper to conclude that “nationwide there are only 109 juvenile offenders serving sentences of life without parole for nonhomicide offenses” (Graham, supra, 560 U.S. at p.__ [130 S.Ct. at p. 2023]), but that paper defined homicide *271 crimes to include attempted murder (Annino et al., Juvenile Life without Parole for Non-Homicide Offenses: Florida Compared to Nation [updated Sept. 14, 2009], Public Interest Law Center, College of Law, Fla. State Univ., p. 4 [for purposes of the study, “[i]ndividuals convicted of attempted homicide ... are defined as homicide offenders”]). Finally, in recognizing the worldwide consensus against imprisoning juveniles for life with no chance of' parole, Graham noted that only two countries—the United States and Israel—impose that sentence in practice, and that “all of the seven Israeli prisoners whom commentators have identified as serving life sentences for juvenile crimes were convicted of homicide or attempted homicide.” (Graham, supra, 560 U.S. at p._[130 S.Ct. at p. 2033], italics added.)
Despite these slight inconsistencies in Graham’s analysis, the main thrust of its reasoning is that crimes resulting in the death of another human being are qualitatively different from all others, both in their severity, moral depravity, and irrevocability, and the Eighth Amendment to the United States Constitution demands courts take cognizance of that fact when sentencing those who committed their crimes while still children.

 Because the constitutionality of any new sentence may be challenged on appeal, this court may be called upon to provide further guidance.