Filed 11/21/13  P. v. Serna CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ISMAEL AUERLJO SERNA,<br><br>Defendant and Appellant. | F065038<br><br>(Super. Ct. No. BF132265A)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Charles R. Brehmer, Judge.

Sylvia Whatley Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and John G. McLean, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

After a jury was impaneled for trial, defendant Ismael Auerljo Serna reached a plea agreement with the prosecution and entered a plea of no contest to second degree

murder (Pen. Code, § 187, subd. (a))* on the condition that he would be sentenced to 15 years to life in state prison.

On appeal, Serna contends that the trial court erred by (1) failing to refer him to the director of the regional center for the developmentally disabled as specified by section 1369 when the issue of competence was raised initially and (2) denying his motion to withdraw his plea.

We affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORIES

On August 30, 2010, the Kern County District Attorney filed an information against Serna charging him with premeditated murder with the special circumstance of arson (§§ 187, subd. (a), 190.2, subd. (a)(17)(H); count 1) and arson of an inhabited structure causing great bodily injury (§ 451, subd. (a); count 2).

At a readiness hearing on March 25, 2011, Serna's attorney, Charles Soria, raised a doubt about his client's competence to stand trial based on his educational background and "SSI [documentation] that says he … has mood disorders and stuff like that." The trial court suspended criminal proceedings pursuant to section 1368 and appointed Dr. Bruce Walker to evaluate Serna. Subsequently, the court learned Walker was unavailable and appointed Dr. Dean Haddock to examine Serna.

Haddock conducted a psychological assessment of Serna and provided a written report in which he concluded Serna was "considered competent to stand trial at this time." After describing the reason for the referral, Haddock explained his understanding of the competence determination: "In general, competency to stand trial requires that an individual have sufficient current ability to consult with their lawyer with a reasonable degree of rational understanding and whether they have a rational as well as factual understanding of the proceedings against them, and the ability to cooperate with their

---

*Subsequent statutory references are to the Penal Code unless otherwise stated.

2.

attorney in the preparation of their defense. Considerations of incompetency would include, but not be limited to individuals suffering from[] mental retardation, organic impairment, psychiatric thought disorder, and/or substance induced [impairment]."

Using Raven's Progressive Matrices Intelligence Test, the doctor determined that "Serna's intellectual ability was estimated as being in the Borderline Intellect (IQ 80-85) range." On the Competency Assessment Instrument (Revised), Serna achieved a raw score of 12 out of 22, placing him in the competent range. On the Revised Competency Assessment Instrument, Serna achieved a raw score of 42 out of 56, also placing him in the competent range. It was noted that Serna was "presently disabled," and he had received Social Security disability benefits as a child. (There was no further discussion of the nature of this disability.) Serna reported that he had been in special education through eighth grade and quit going to school after two weeks in high school. Serna also told Haddock, "I am slow and do not understand things."

Haddock wrote that "Serna's personality appears to be best characterized as learning disabled [and] antisocial …." After concluding that Serna was competent to stand trial, Haddock also observed, "due to his illiteracy and Borderline Intellect [Serna] will need simple explanations of the court procedures."

On June 8, 2011, the trial court considered Haddock's report, and Serna's attorney submitted the matter on the doctor's report. The court found Serna competent to stand trial and reinstated criminal proceedings.

Trial began on September 12, 2011, with the trial court ruling on Serna's motions in limine. The next day, the court considered and granted the People's motion in limine to admit a covertly tape-recorded statement of Serna. A panel of jurors was selected and sworn.

The next day, September 14, 2011, the court was informed that the parties had reached a proposed disposition. The prosecution would amend the information to add count 3, second degree murder, and would dismiss counts 1 and 2, and Serna would enter

a plea of guilty or no contest to count 3 on the condition of a sentence of 15 years to life in prison. Serna signed a "Felony Advisement of Rights, Waiver and Plea Form," initialing acknowledgements of constitutional rights, including the rights to an attorney and a trial by judge or jury; the right to testify; the rights to present a defense and confront witnesses; and the right against self-incrimination.

The trial court addressed Serna, asking him if he understood that his sentence would be 15 years to life (he did) and if he had any questions (he did not). "This is what you'd like to do?" the court asked, and Serna responded, "Yep." Soria was confident that his client understood the consequences of entering a plea to amended count 3. The court accepted Serna's plea of no contest to count 3, murder in the second degree, and the prosecutor dismissed the remaining counts and enhancements. Serna was referred to the probation department for a presentence investigation.

On October 26, 2011, Serna asked to withdraw his plea. Soria moved to be relieved as attorney of record, and the trial court granted the motion. On December 1, 2011, Serna's new counsel, Henry Marquez, filed a "Motion for Mental Evaluation" and declared his doubt about Serna's mental competence. The court granted the motion.

Dr. Eugene Couture examined Serna and provided Marquez with an evaluation regarding Serna's mental capacity. Couture administered the Kaufman Brief Intelligence Test and Wide Range Achievement Test (Fourth Edition) and determined that Serna's scores were in a range consistent with mental retardation. Couture evaluated Serna using the Competence Assessment for Standing Trial for Persons with Mental Retardation (CAST-MR). He found Serna's responses most closely matched those of individuals who are not competent to stand trial. He noted that in the earlier competence evaluation, Haddock had used competency tests "aimed at intact adults, not at mentally retarded persons." Couture reported that Serna believed he had agreed to a sentence of 15 years in prison (i.e., a determinate sentence), but "[w]hen he got to court, he apparently learned that the sentence was 15 years to life."

4.

In his concluding "Impressions and Recommendations," Couture wrote:

"His understanding of the operation of the court was impaired. His understanding of the charges against him was good, and his ability to describe the events leading up to his arrest, is good. Mr. Serna may not, however, have fully understood the plea as it was offered to him before. Further, pressure to quickly accept a plea probably would only confuse him more. Mr. Serna probably is not capable of making quick intelligent decisions. Rather, he should be able to spend more time with his attorney considering his options in a collaborative process. He alleges that he was not able to do this with his prior attorney.

"In my opinion, Mr. Serna is only borderline competent to stand trial. He really does not understand the courtroom procedures and the limitations of the criminal justice system. He is capable of telling a narrative about what happened to him with adequate detail and timelines and, thus, can cooperate with counsel in building a rational defense. I think he deserves some consideration, however, for his lack of intellectual acuity in a high demand situation[] like the courtroom.

"I would recommend that Mr. Serna be allowed to reconsider his plea and to work with his attorney, Mr. Marquez, in developing an alternative defense."

On March 23, 2012, Serna filed a motion to withdraw his plea. He asserted that a defense investigator "exceedingly pressured" him and his mother to enter a plea. Serna's mother, Jessie Villarreal, wrote that she felt pressured by the investigator, Bruce Binns, to write a note to her son telling him to agree to the plea bargain. Serna argued that his "will was completely overborne by the urgency with which he was being approached by the investigator, by the urgings of his mother's note, and both of those factors taken together with his lack of mental capacity to fully understand the court process, or of the repercussions of his immediate decision."

Marquez wrote a declaration in support of Serna's motion to withdraw. Referenced in the declaration and included with the motion papers were (1) a handwritten note signed by Villarreal and (2) a typed statement signed by Villarreal describing Binns's conduct. The handwritten note appears to be dated "10/11" and reads:

5.

"Ismael

"Mr. Bruce Binn is giving me this paper, telling me that I need [to] tell you to take this plea deal 15 to life; if not [they're] going to give you life. He said that I need to do this before your court started. He told me this was your last chance if not that you would do life. All I could do was cry, not knowing if I should or not (write you this). Bruce kept telling that I had to hurry up. So he can give you this note.

"Your mom

"Jessie Villarreal"

The People filed an opposition to Serna's motion with supporting declarations by Binns and the prosecutor assigned to Serna's case, Arthur Norris. In his declaration, Binns stated that, on the morning of September 14, 2011, he spoke to Villarreal, and she expressed her concern about the court's adverse rulings on pretrial motions the previous day. (The "adverse rulings" likely referred to the court's ruling that a covertly recorded statement by Serna was admissible.) Villarreal wrote a note to her son, "expressing her desire that he accept the previously[] offered plea bargain of a plea to second degree murder for 15 years to life." Binns showed the note to Norris and asked if the offer of second degree murder was still available; Norris indicated that it was. The same morning, Binns and Soria met with Serna in a jury room and allowed him to read his mother's note. According to Binns, "Mr. Soria (in my presence) sat with Mr. Serna and explained the various rights he would have to give up in order to enter a plea. [¶] … [¶] … During that discussion, Mr. Serna asked several questions, all of which Mr. Soria answered."

Binns further declared that, on March 26, 2012, Norris telephoned Binns and read the note attached to Serna's motion to withdraw his plea. He continued: "The note which Mr. Norris read to me over the phone is NOT the note Ms. [Villarreal] wrote that morning. The allegations she makes in that note, regarding what I supposedly told her, are absolutely NOT true."

6.

In his declaration, Norris stated that, on September 14, 2011, while he was waiting for trial to start, Binns approached him. Binns told Norris that Villarreal had decided it was now advisable for her son to enter a plea if the previous offer was still on the table. Binns allowed Norris to read the note. Norris declared that the handwritten note attached to Serna's motion to withdraw his plea was not the note he was shown on September 14, 2011.

On March 27, 2012, the trial court considered Serna's motion to withdraw his plea. The parties submitted the matter on the motion papers, and the motion was denied. The court explained:

> "The burden of proof is clear and convincing evidence.… I was here in this court when the plea was taken. I took the plea. I was here when the trial commenced. And there was a significant period of time for Mr. Serna to consider the People's offer. Also, as I understand it, this was an offer that had been made prior to trial. So this was not simply an offer that was presented to Mr. Serna where he had 5, 10, 15, 20, even 30 minutes to essentially review it. He had a substantial period of time. Also, he was questioned on the record in detail. He also spoke to his counsel at the time, and his counsel stipulated that the plea was taken in a knowing, intelligent, and voluntary fashion as well. He also filled out and signed a written waiver form. He did have effective assistance of counsel, as he does today.
>
> "As to any pressure on Mr. Serna, if there … was any, it was his pressure that he imposed upon himself. It's not uncommon for a defendant in a criminal case to enter a plea when the reality of empanelment of the jury occurs. Mr. Serna was under no obligation to enter a plea at the time of trial, regardless of what communication he had or did not have with his mother. It was his decision. There is no evidence that Mr. Serna was not mentally capable of making a reasonable, rational, knowing, voluntary, and intelligent decision at the time he entered the plea.
>
> "This is inclusive of the doctor's report. There are a couple of portions of the doctor's report—and I did review all of it very carefully— but a couple that kind of jumped out at me, and one of those he scored 100 percent as to his understanding of what the procedures were and what was happening in the courtroom.
>
> "Also, although it is not dispositive of the issue, the defendant does have a prior criminal record and so, therefore, does have some familiarity

with the legal system and how it works and what his rights are having entered pleas in prior cases.

"But even setting that portion aside, I am not convinced clearly and convincingly that his plea should be withdrawn."

The court proceeded to sentencing and imposed a sentence of 15 years to life in state prison.

Serna filed a notice of appeal on May 25, 2012.

## DISCUSSION

### I.      Section 1369 and the competence determination

Serna contends the judgment must be reversed and the matter must be remanded with instructions to the trial court to refer him to the director of the regional center for the developmentally disabled. We disagree.

It is well established that the criminal trial of an incompetent defendant violates the defendant's right to due process. (*Medina v. California* (1992) 505 U.S. 437, 453; *People v. Weaver* (2001) 26 Cal.4th 876, 903.) When a criminal defendant's attorney informs the court of his or her belief that the defendant may be mentally incompetent, the court is required to order that the question of the defendant's mental competence be determined in a hearing held pursuant to sections 1368.1 and 1369. (§ 1368, subd. (b).) Criminal proceedings are suspended pending the competence determination. (*Id.*, subd. (c).)

Section 1369 sets forth the procedures for determining whether a criminal defendant is competent to stand trial. The trial court is required to appoint a psychiatrist or licensed psychologist to examine the defendant. (§ 1369, subd. (a).) The examiner, in turn, must evaluate "the defendant's ability or inability to understand the nature of the criminal proceedings or assist counsel in the conduct of a defense in a rational manner as a result of a mental disorder .…" (*Ibid*.) Section 1369, subdivision (a), further provides, "If it is suspected the defendant is developmentally disabled, the court shall appoint the

director of the regional center for the developmentally disabled … or the designee of the director, to examine the defendant."

Here, Soria expressed a doubt about Serna's competence and the trial court properly suspended the proceedings and appointed a doctor, Haddock, to examine Serna. Haddock determined that Serna's intellectual ability was in the "Borderline Intellect (IQ 80-85) range" and concluded that he was competent to stand trial.

On appeal, Serna claims that, after reviewing Haddock's report, the trial court erred by failing to refer him to the director of the regional center for the developmentally disabled for another evaluation pursuant to section 1369.

As a preliminary matter, the Attorney General argues that this claim has been forfeited because Soria failed to request such a referral. "When there exists substantial evidence of the accused's incompetency, a trial court must declare a doubt and hold a hearing pursuant to section 1368 *even absent a request by either party*." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1064, italics added (*Koontz*).) "It is not essential for the defendant, his or her counsel, or the prosecutor to make a motion which raises the issue of the defendant's competence in order to permit consideration of the issue on appeal." (*People v. Castro* (2000) 78 Cal.App.4th 1402, 1416 (*Castro*), disapproved on another ground by *People v. Leonard* (2007) 40 Cal.4th 1370, 1389 (*Leonard*); see also *People v. Ary* (2004) 118 Cal.App.4th 1016, 1021 [competence determination cannot be waived by defendant or counsel].) Accordingly, we reject the Attorney General's position that the claim has been forfeited.

Nonetheless, Serna's appellate claim fails on the merits. First, on the record before it, the trial court was not required to refer Serna to the director of the regional center for the developmentally disabled. Second, even assuming an error, there was no prejudice.

When there is substantial evidence of incompetence, the trial court must declare a doubt and conduct a competence hearing. (*Koontz*, *supra*, 27 Cal.4th at p. 1064.) As we

9.

have discussed, section 1369 requires the trial court to refer a defendant to the director of the regional center "[i]f it is suspected the defendant is developmentally disabled .…" To prevail on his claim, Serna must show that Haddock's report provided substantial evidence that he was developmentally disabled.[†]

"Developmental disability," for the purpose of determining mental competence, is defined as "a disability that originates before an individual attains age 18, continues, or can be expected to continue, indefinitely and constitutes a substantial handicap for the individual, and shall not include other handicapping conditions that are solely physical in nature. As defined by the Director of Developmental Services, in consultation with the Superintendent of Public Instruction, this term shall include mental retardation, cerebral palsy, epilepsy, and autism. This term shall also include handicapping conditions found to be closely related to mental retardation or to require treatment similar to that required for mentally retarded individuals .…" (Former § 1370.1, subd. (a)(1)(H).)[‡] Mental retardation is "the condition of significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested before the age of 18." (Former § 1376, subd. (a); see fn. 3, *ante*.) "'Mild' mental retardation is typically used to describe people with an IQ level of 50-55 to approximately 70." (*Atkins v.*

_____

[†]We reject Serna's argument, made in his reply brief, that he need not show substantial evidence of developmental disability because "mere suspicion is all that is necessary to trigger the duty to make the referral." Nothing in the record suggests that the trial court (or Serna's own attorney) actually suspected that Serna was developmentally disabled. In any event, Serna cites no case law supporting his position that he may prevail with a showing of *less* than substantial evidence of developmental disability. (Cf. *People v. Lewis* (2006) 39 Cal.4th 970, 1047 ["Only when the accused presents 'substantial evidence' of incompetence does due process require a full competency hearing"]; *Castro*, *supra*, 78 Cal.App.4th at pp. 1416-1418 [analyzing whether trial court was required to appoint director of regional center for developmentally disabled under substantial evidence standard].)

[‡] Effective January 1, 2013, the term "mental retardation" in sections 1370.1 and 1376 was replaced by the term "intellectual disability," without substantive change in the definitions. (Stats. 2012, ch. 457, § 1.)

*Virginia* (2002) 536 U.S. 304, 308, fn. 3, citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000), pp. 42-43.) The California Legislature, however, "has chosen not to include a numerical IQ score as part of the definition of mentally retarded." (*In re Hawthorne* (2005) 35 Cal.4th 40, 48.)

Serna contends that Haddock's diagnosis, along with his "recognition of [Serna's] low mental functioning provided sufficient objective evidence" of mental retardation to trigger the requirement that he be referred to the director of the regional center for the developmentally disabled. We are not convinced. Haddock knew that mental retardation is a consideration in evaluating competence, but he never used either the term "mentally retarded" or "developmentally disabled" to describe Serna. Instead, Haddock estimated Serna's intellectual ability as "Borderline Intellect (IQ 80-85)." Although the statutory definition of mental retardation does not include a numerical IQ score, Serna's score of 80 to 85 is above the score typically associated with mild retardation. (*Atkins v. Virginia*, *supra*, 536 U.S. at p. 308, fn. 3; cf. *Castro*, *supra*, 78 Cal.App.4th at p. 1420 [substantial evidence of developmental disability where defendant had IQ of 46 to 69].) Haddock determined that Serna was "learning disabled" and "antisocial," but we hesitate to conclude that this is substantial evidence of mental retardation. It was also reported that Serna is a high school dropout and describes himself as "slow," but these facts do not necessarily suggest that he is mentally retarded. In sum, we cannot say that Haddock's report was substantial evidence that Serna is developmentally disabled such that the trial court was required, as a matter of law, to appoint the director of the regional center for the developmentally disabled to examine him.[§]

---

[§]The Attorney General correctly notes that Couture's report, which was prepared in February 2012, may not be considered in our analysis of whether there was substantial evidence of mental retardation requiring appointment of the director of the regional center of developmental disability. Couture's report was not available to the trial court in June 2011 when it made its competence determination.

Further, even assuming the trial court erred by not appointing the director of the regional center, we discern no prejudice. While a trial court's failure to hold a competence hearing at all requires reversal of any ensuing criminal conviction, the failure to appoint the director of the regional center to conduct the evaluation is not as egregious an error. (*Leonard*, *supra*, 40 Cal.4th at p. 1390.) In the latter case, the ensuing conviction "need not be reversed unless the error deprived [the defendant] of a fair trial to determine his competency." (*Ibid*.)

In *Leonard*, the defendant suffered from epilepsy, a developmental disability, but the trial court failed to appoint the director of the regional center to examine him as required under section 1369. (*Leonard*, *supra*, 40 Cal.4th at p. 1388.) The defendant was, however, evaluated by experts who were familiar with his epilepsy and considered it in evaluating his competence. (*Id*. at p. 1390.) Our Supreme Court held there was no prejudice, concluding:

> "In summary, appointment of the director of the regional center for the developmentally disabled (§ 1369, subd. (a)) is intended to ensure that a developmentally disabled defendant is evaluated by experts experienced in the field, which will enable the trier of fact to make an informed determination of the defendant's competence to stand trial. Here, defendant was evaluated by doctors who possessed these qualifications, and their testimony provided a basis for the trial court's ruling that defendant was competent to stand trial. Thus, the court's failure to appoint the director of the regional center to examine defendant did not prejudice defendant." (*Leonard*, *supra*, 40 Cal.4th at p. 1391.)

In the present case, Haddock's report shows that he is a diplomate of the American Board of Disability Analysts and a life fellow of the American College of Forensic Examiners. He was aware of the fact that mental retardation is considered in determining competence, and he assessed Serna's intellectual abilities using an intelligence test. Yet, Haddock did not find that Serna was mentally retarded or developmentally disabled. He did, however, consider Serna's intellectual limitations in making his competence assessment. Haddock concluded that Serna was competent to stand trial but

12.

recommended that he would need simple explanations because of "his illiteracy and Borderline Intellect." Under these circumstances, the trial court's failure to appoint the director of the regional center to examine Serna did not deprive Serna of a fair trial on his competence and, consequently, did not cause prejudice.

## II.    *Motion to withdraw plea*

Serna next contends that he should have been allowed to withdraw his plea because he showed good cause that he suffered from a mental disability that made him susceptible to misunderstanding the consequences of his plea. He also argues that the court misunderstood the undisputed facts.

"On application of the defendant at any time before judgment …, the court may, … for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted." (§ 1018.) "To establish good cause, it must be shown that defendant was operating under mistake, ignorance, or any other factor overcoming the exercise of his free judgment. [Citations.] Other factors overcoming defendant's free judgment include inadvertence, fraud or duress. [Citations.] However, '[a] plea may not be withdrawn simply because the defendant has changed his mind.' [Citations.]" (*People v. Huricks* (1995) 32 Cal.App.4th 1201, 1208 (*Huricks*).) The defendant has the burden to demonstrate good cause by clear and convincing evidence. (*People v. Shaw* (1998) 64 Cal.App.4th 492, 496.) "Guilty pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged." (*People v. Hunt* (1985) 174 Cal.App.3d 95, 103.)

We review the trial court's decision whether to permit a defendant to withdraw his plea for an abuse of discretion. We review the court's factual findings and credibility determinations for substantial evidence. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.)

Serna asserts that his claim he did not understand the plea agreement is uncontroverted. Serna did not testify or submit a declaration regarding his understanding

of the plea agreement, but Couture indicated that Serna reported he did not understand the agreement was for a sentence of 15 years to life. The trial court, however, was free to reject Serna's version of his understanding of the plea agreement. (*People v. Hunt*, *supra*, 174 Cal.App.3d at p. 103 [in deciding defendant's motion to withdraw his plea, "the trial court is not bound by uncontradicted statements of the defendant"].) The trial court noted that Serna had a significant period of time to consider the plea offer of 15 years to life and he was questioned about it in detail. At the time the plea was entered, the trial court was able to observe and question Serna, and Soria stipulated that the plea was taken in a knowing, intelligent, and voluntary fashion. Further, Couture wrote that Serna's understanding of the charges against him and the events leading up to his arrest were good and opined that he was capable of cooperating with counsel. This was substantial evidence from which the trial court could determine that Serna understood the plea agreement and voluntarily entered his plea.

In *Huricks*, *supra,* 32 Cal.App.4th at pages 1206 and 1208, the defendant argued that he was subjected to "overbearing duress" to enter a plea of no contest based on his family's advice that he take the plea bargain and his attorney's statement to the court that the defendant was "confused and indecisive" about whether to take the plea. The appellate court rejected the claim of duress based on family pressure, concluding that "[n]othing in the record indicates he was under any more or less pressure than every other defendant faced with serious felony charges and the offer of a plea bargain." (*Id*. at p. 1208.) Similarly, in this case, the trial court determined that any pressure on Serna was "pressure that he imposed upon himself" as the reality of a jury trial approached. We see no abuse of discretion.

Serna argues, in the alternative, that the motion to withdraw his plea should be remanded for further consideration because the trial court apparently misunderstood the evidence. Couture wrote that Serna scored 100 percent on understanding case events, but he scored 44 percent on basic legal concepts. In denying Serna's motion to withdraw his

14.

plea, the trial court stated that Serna scored 100 percent as to his understanding of what the procedures were. We are not persuaded that this statement requires remand. The trial court's statement appears to us to be a misstatement rather than a misunderstanding of the record. Further, we are not convinced that the trial court's statement amounts to a "fail[ure] to properly exercise its discretion" as Serna claims. Serna relies on *People v. Ruiz* (1975) 14 Cal.3d 163, 165, in which the defendant's conviction for heroin for sale was reversed because the jury was not instructed on the specific intent to sell. The California Supreme Court modified the verdict to a single count of possession of heroin and remanded for a new sentencing hearing. (*Id*. at p. 168.) Remand was called for because the trial court, in deciding the sentence, "relied significantly if not wholly upon the fact that defendant stood before the bench convicted of possession of heroin *for sale*." (*Ibid*.)[**] In the present case, however, the trial court did not rely significantly or wholly upon the fact that Serna scored 100 percent on a portion of Couture's examination. Rather, the court relied on its own observation of the trial proceedings, the ample time Serna had to consider the plea offer, and the statements Serna and Soria made at the time the plea was entered. These facts are supported in the record. Given these circumstances, we conclude the trial court acted within its discretion in ruling on Serna's motion to withdraw his plea and no remand is necessary.

---

[**]We also note that the court went on to limit its holding: "We by no means intend to imply or indicate by this decision that whenever a sentencing court bases its determination on a factual premise which later turns out to be erroneous the defendant is entitled to a new sentencing hearing. We hold only that when as in this case the sentencing court bases its determination to deny probation in significant part upon an erroneous impression of the defendant's *legal* status, fundamental fairness requires that the defendant be afforded a new hearing and 'an informed, intelligent and just decision' on the basis of the facts." (*People v. Ruiz, supra*, 14 Cal.3d at p. 168.) Here, there is no claim that the trial court had an erroneous impression of Serna's legal status.

## *DISPOSITION*

The judgment is affirmed.

_____
Oakley, J.[††]

WE CONCUR:

_____
Kane, Acting P.J.

_____
Franson, J.

---

[††]Judge of the Superior Court of Madera County, assigned by the Chief Justice pursuant to article VI, section 6, of the California Constitution.